(February 15, 1913.)

## JOE BENGOECHEA, Respondent, v. ELMORE COUNTY, Appellant.

[130 Pac. 459.]

TAX ASSESSMENTS—GROSSLY OVER-ESTIMATED PROPERTY—RIGHT TO RECOVER TAX MONEY PAID ON OVER-ASSESSMENTS.

1. Under the provisions of sec. 1791, county commissioners have the power to refund to a taxpayer any money to which he may be entitled by reason of taxes having been paid twice on the same property, or on account of double assessments or erroneous assessment through clerical errors, or where, in the judgment of the commissioners, the assessment upon the property "was so grossly over-estimated that the same was a mistake."

2. The clause "so grossly over-estimated that the same was a mistake," contained in sec. 1791, Rev. Codes, does not have reference to an assessment made in good faith with full knowledge on the part of the assessor of the extent, description, situation and probable or generally estimated value of the property, and where the assessment was made in the regular way in due course of official duty.

3. The clause "so grossly over-estimated that the same was a mistake," contained in sec. 1791 of the Rev. Codes, with reference to the refunding of tax money, was intended to authorize granting relief where the valuation has been placed upon property, as the same appears upon the assessment-roll, so excessive and disproportionate to the generally estimated value of the property as to suggest in itself that some error or mistake has been made in the assessment, and may cover a case where the assessor was mistaken as to the location or distribution of the property, its extent or

bounds, or was misinformed as to the value of that or similar property or had no knowledge whatever as to the probable value of the property.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Application to the board of commissioners to have certain tax money refunded to the property owner. Application granted by commissioners and appeal taken by the county to the district court. Judgment entered in favor of the claimant in the district court and appeal prosecuted to this court. Judgment *reversed* and cause remanded with directions.

W. L. Harvey, for Appellant.

The action of the county board of equalization is final, and cannot be appealed from. (*General Custer Min. Co. v. Van Camp,* 2 Ida. 40, 3 Pac. 22.)

Daniel McLaughlin, for Respondent.

The order made by the board of county commissioners is an appealable order. (*Fenton v. Board of County Commrs.,* 20 Ida. 392, 119 Pac. 41; sec. 1950, Rev. Codes.)

AILSHIE, C. J.—On the 9th of January, 1912, the respondent herein presented a petition and claim to the board of county commissioners of Elmore county, setting forth that the Bengoechea Hotel at Mountainhome had been grossly over-valued, and asked for a refund of $400 of taxes which he had paid under protest. The same day the board of commissioners examined the matter and made an order directing that respondent be refunded the sum of $155 on account of this claim. The county, acting through the county attorney, thereafter prosecuted an appeal to the district court. The case was tried in the district court and the order of the board of commissioners was modified and affirmed. The county thereupon appealed to this court.

Respondent filed his claim with the board of commissioners, and the board assumed to act thereon under the authority of sec. 1791 of the Rev. Codes. The portion of the section particularly applicable to this case reads as follows:

"The county commissioners of the various counties in the state of Idaho, shall have power to refund to the taxpayer any money to which he may be entitled by reason of the taxes upon property having been paid twice for the same year, or any moneys to which any taxpayer may be entitled by reason of the double assessment or erroneous assessment of property through clerical or other errors, or where, in the judgment of the county commissioners, the assessment upon property was so grossly over-estimated that the same was a mistake. The said money shall be refunded by warrants drawn on the current expense fund of the county."

This claim was based particularly on that clause of the foregoing section which provides that the board may refund taxes when in their judgment the "assessment upon property was so grossly over-estimated that the same amounts to a mistake." The statute is quite clear as to the refunding of taxes paid under certain conditions: First, where the taxes have been paid twice in the same year; second, where a double assessment has been made; third, where an assessment has been made erroneously through clerical or other errors. It is· not a difficult matter to ascertain when a case comes within one of the foregoing provisions of the statute, but it becomes a more difficult problem to determine just what the lawmakers intended when writing the provision authorizing a refund "when the property has been so grossly over-estimated that the same amounts to a mistake." In fact, it is a difficult problem to determine just when an over-estimate of property, however *gross* the *over-estimate* may be, will "amount to a mistake." The clause "so grossly over-estimated that the same was a mistake" certainly cannot have reference to an assessment made in good faith with full knowledge on the part of the assessor of the extent, location, situation and probable value of the property, and where the assessment was made in the regular way and in due course of official duty.

We are rather inclined to believe that the legislature meant by this statute to provide for granting relief in a case where a valuation has been placed on the property, as the same appears from the assessment-roll, so excessive and disproportionate to the actual or generally estimated value of the property as to suggest in itself error and mistake as to the description or extent of the property or its true situation or location. If, for example, a piece of property worth but one thousand dollars were assessed at ten thousand, the presumption might be raised thereby that the assessor was mistaken as to the location, description, extent or bounds of the property or was misinformed as to the value of that or similar property, or else that he had acted fraudulently and that the property owner had no notice of the valuation placed on such property, otherwise he would have applied to the board of equalization for relief.

Taking the case at bar, the property was assessed as follows: Lot, $180; improvements which consisted of a hotel, at $23,400, and furniture contained in the hotel at $6,000, making a total of $29,580. When the case finally reached the district court on appeal from the board of commissioners, the court found that the true and correct value of the property and the amount at which it should have been assessed was. $17,000, and that the property had been over-estimated in the sum of $12,580, and accordingly ordered that the commissioners draw a warrant on the current expense fund of the county for the sum of $339.66 to reimburse the property owner for excess of taxes for the year. When the case was tried in court, a number of witnesses were called, and they variously estimated the value of this property at all the way from a nominal sum to about $31,000. One of the contractors who built the building testifies that the construction of the building was commenced in the year 1908 and that the building actually cost $26,000. It also seems to have been generally admitted that the furnishings in the building cost $6,000. The lot on which the building stood was estimated at about $200. An abstracter and real estate man of Mountainhome, the town in which the building is situated, esti-

mated that the building and lot was worth $20,000 at the time this assessment was made, exclusive of the furnishings in the building. The assessor testified that he made this assessment deliberately and in the same manner he made all other assessments; that he knew what he was doing, and that there was no mistake about the assessment; that he made assessments generally after discussing values with citizens and property owners in the community and vicinity where the property was located. In other words, the evidence shows an utter lack of agreement or unanimity as to the true value of this property,—it is the kind and class of property about which men honestly disagree as to its value.

Now, while it is admitted that this is a high and perhaps an over-assessment, still there is no fact disclosed which would bring the case within the provisions of this statute or would raise the inference that any mistake had been made such as is contemplated by the statute and could be characterized as a *gross over-estimate.* We presume that hundreds of cases of this character and differing only in degree might be found in almost every county in the state, and if a taxpayer is to recover in a case like this, then there are hundreds and perhaps thousands of taxpayers in the state who would be entitled to recover varying amounts on account of over-estimates as to the value of their property. The statute certainly never meant to cover such a case. The legislature has provided that the taxpayer who is dissatisfied with the valuation placed upon his property must apply to the board of equalization and that he may then and there have a hearing. Sec. 1695, Rev. Codes, as amended by extraordinary session of 1912, provides that no reduction in valuation shall be made to any taxpayer "unless such person or agent making application attends and answers all questions pertinent to the inquiry." This application must be made at the regular session of the board of equalization. It has been the uniform policy of the legislature of this state to limit changes and alterations in assessed value of property to specified times and a special body; namely, before the board of equalization at its regular session held for that purpose. The legisla-

ture has declined to provide for any appeal to be taken from an order of the board of equalization in equalizing taxes. It is, therefore, clear to us that the legislature in adopting sec. 1791 did not mean or intend to provide another method whereby the taxpayer, after assessments have been made and equalization had and taxes have been paid, may present his bill to the board and collect back a part of those taxes; or, if the board refuses to allow any claim, he may then appeal to the courts and thus tie up the revenues, and if he gets a judgment, embarrass the county in the administration of the public affairs.

In this case, the money had been paid into the county treasury and distributed and disbursed to the various funds, part of it having been paid to school districts and the village or city government of Mountainhome. The remedy of the taxpayer was by application to the board of equalization,— he had notice of the valuation placed on his property and the law gave him the right to apply to the board for a reduction where both sides might have had a hearing.

It is clear to us that the statute (sec. 1791) was not intended to cover a case of this kind, and for that reason the judgment herein must be reversed, and it is so ordered, and the cause is remanded, with direction to the district court to reverse the action of the board of commissioners in accordance with the views herein expressed. Costs awarded in favor of appellant.

Sullivan and Stewart, JJ., concur.