(October 21, 1915.)

## IDAHO IRRIGATION COMPANY, LTD., a Corporation, Appellant, v. COUNTY OF LINCOLN and V. V. BOWER, Treasurer and Ex-officio Tax Collector of Lincoln County, Respondents.

[152 Pac. 1058.]

TAXATION—EXEMPTION—CAREY ACT — IRRIGATION WORKS — CONSTRUCTION COMPANY — STATUTORY CONSTRUCTION — ILLEGAL TAX — PAID UNDER PROTEST—RIGHT TO RECOVER BACK.

1. *Held*, under the provisions of the act of Congress known as the Carey Act and the statutes of this state in relation thereto, the state is authorized to enter into contracts with construction companies or others for the construction of irrigation systems for the reclamation of the lands referred to therein.

2. Under the provisions of sec. 1629, Rev. Codes, any person, company or association furnishing water for any tract of land under the provisions of said Carey Act shall have a first and prior lien on the water right and land upon which such water is used, for all deferred payments for such water rights.

[As to lands that may be included in an irrigation district, see note in Ann. Cas. 1916A, 1222.]

3. Under the provisions of subd. 12 of sec. 1644, Rev. Codes, all irrigation canals, ditches and water rights appurtenant thereto, when the owner or owners of such irrigation canals and ditches use the water thereof exclusively upon land or lands owned by him, her or them, situated wholly within this state, are exempt from taxation; provided in case any water be sold or rented from such canal or ditch, such canal or ditch shall be taxed to the extent of such sale or rental.

4. Under the provisions of paragraph N. of sec. 4 of the general revenue law (Sess. Laws 1913, p. 173), irrigation canals and ditches and water rights appurtenant thereto are exempt from taxation when no water is sold or rented from any such canal or ditch, only to the extent that the water conveyed by such canal or ditch is used to irrigate lands within this state. It is also provided in said section that in case any water be sold or rented from any such canal or ditch to irrigate lands within the state, then and in that event such canal or ditch shall be assessed for taxation to the extent that such water is so sold or rented.

5. *Held*, that since it is alleged in the complaint, and the allegation admitted as true by the demurrer, that no water has been

sold or rented from the system involved except as water rights were sold to settlers under the provisions of the contract with the state, and that the unsold water rights, or the water represented thereby, has not been sold or rented, and that the appellant has no right or authority under the law to sell or rent the water and has not done so, therefore said irrigation works, ditches and canals are exempt from taxation.

6. *Held,* that the intention of the legislature in passing said exemption statute was to place ditches and canals from which water was sold or rented in one class, and those from which no water was sold or rented in a different class.

7. *Held,* that the assessment in the case at bar was not an erroneous assessment, neither was it made through clerical or other error, but that it was an assessment on property that was exempt from taxation and involved an illegal assessment, and that the taxes paid under protest can be recovered in this action, under the authority of *Shoup v. Willis,* 2 Ida. 120 (108), 6 Pac. 124; *Weiser National Bank v. Jeffreys,* 14 Ida. 660, 95 Pac. 23, and *Bengoechea v. Elmore County,* 23 Ida. 397, 130 Pac. 459.

[As to condemnation proceedings against land for purposes of irrigation, see note in 102 Am. St. 831.]

APPEAL from the District Court of the Fourth Judicial District for Lincoln County. Hon. Edward A. Walters, Judge.

Action to recover taxes paid under protest. Judgment for plaintiff. *Reversed.*

B. W. Oppenheim, N. M. Ruick, A. L. Fletcher and V. P. Coffin, for Appellant.

The history, purpose and motive for the 1912 amendment to sec. 1644, Rev. Codes, may be found by reference to *Spokane Valley Land & Water Co. v. Kootenai County,* 199 Fed. 481, in which case exemption from taxes in Idaho was claimed for irrigation canals and water rights appurtenant thereto where the water was conveyed to and principally used within the state of Washington. Money paid under protest for taxes erroneously or illegally assessed can be recovered back. (*Shoup v. Willis,* 2 Ida. 120 (108), 6 Pac. 124; *Weiser National Bank v. Jeffreys,* 14 Ida. 659, 660, 95 Pac. 23; *Bengoechea v. Elmore County,* 23 Ida. 397, 130 Pac. 459.)

Harlan D. Heist, for Respondents.

The company is the absolute owner of the property that has been taxed and not the settler. If appellant is to claim an exemption under the law, its complaint must show that the water conveyed by such canals or ditches is used to irrigate lands within this state, and all the water is actually used and owned by the appellant only for the purpose of sale.

"The consumers appear to be making the use contemplated by the constitution, but the ditch company is not; hence, the ditch is not used exclusively for the purpose of irrigating lands belonging to the owners of the ditch." (*Murray v. Board of Commrs. of Montrose County*, 28 Colo. 427, 65 Pac. 26.)

All exemptions from taxation are to be strictly construed and cannot be enlarged by construction. (Cooley, Tax., 2d ed., 205; *Vicksburg etc. R. Co. v. Dennis*, 116 U. S. 665, 6 Sup. Ct. 625, 29 L. ed. 770, 37 Cyc. 892; *Salisbury v. Lane*, 7 Ida. 370, 63 Pac. 383.)

Plaintiff does not plead duress or fraud on part of defendant, and consequently we must assume the payment of taxes in question to have been a voluntary payment on part of the company.

"*Assumpsit* does not lie to recover moneys voluntarily paid upon a claim of right with full knowledge of all the facts." (*Brumagim v. Tillinghast*, 18 Cal. 265, 79 Am. Dec. 176; *Bucknall v. Story*, 46 Cal. 589, 13 Am. Rep. 220; *Cooper v. Chamberlin*, 78 Cal. 450, 21 Pac. 14; *Dear v. Varnum*, 80 Cal. 86, 22 Pac. 76; *Harralson v. Barrett*, 99 Cal. 607, 34 Pac. 342; *Jefferson County v. Hawkins*, 23 Fla. 223, 2 So. 362; *Evans v. Hughes County*, 3 S. D. 244, 580, 52 N. W. 1062, 54 N. W. 603; *Radich v. Hutchins*, 95 U. S. 210, 24 L. ed. 409; *Dennehy v. McNulta*, 86 Fed. 825, 30 C. C. A. 422, 41 L. R. A. 609.)

"Payments made with full knowledge of all the facts constitute voluntary payments, and cannot be recovered, and mistake or ignorance of law gives no right to recover." (*Walker v. St. Louis*, 15 Mo. 563, 575; *Douglas v. Kansas*

*City,* 147 Mo. 428, 437, 48 S. W. 851; *American Brewing Co. v. St. Louis,* 187 Mo. 367, 86 S. W. 129, 2 Ann. Cas. 821, 823; *Pacific Coast Co. v. Wells,* 134 Cal. 471, 66 Pac. 657.)

SULLIVAN, C. J.—This action was begun by the Idaho Irrigation Company, a corporation engaged in the construction of irrigation works under the provisions of the act of Congress known as the Carey Act, and under the statutes of this state applicable to said act, to recover from Lincoln county the sum of $1,623.54, that being the first half of the taxes assessed against 69.25 miles of canal which form a part of the distributing system of the irrigation works constructed by plaintiff under a contract with the state of Idaho. The tax was paid under protest in writing, the treasurer, as tax collector, being notified that action would be brought to recover back the sum so paid.

The complaint alleges that the principal object and purpose of the plaintiff corporation was to construct under a contract with the state of Idaho, pursuant to the provisions of said Carey Act, an irrigation system to reclaim upward of 100,000 acres of land lying mainly in Lincoln county. A copy of said contract and supplemental contract is attached to the complaint and made a part thereof.

It is alleged that pursuant to said contract plaintiff constructed an irrigation system consisting of impounding dam and reservoir and diversion dams located in Blaine county, together with many miles of main and subordinate canals and laterals in Lincoln county; that said construction is and was confined exclusively to the system to be constructed by the company in Lincoln county; except as otherwise provided in said contract; that in said contract with the state it is provided that shares of stock in what is denominated the "holding" or "operating" company may be sold and disposed of by the construction company to parties entering the lands to be reclaimed, said shares of stock each to represent an interest in proportion to the number of shares—not exceeding $150,000—which may be finally disposed of in the dams,

canals, reservoirs and water rights and other rights and franchises of the plaintiff as constructor of said system.

It is alleged that by virtue of said contract said irrigation system belongs to the holders of said shares of stock already disposed of and to the holders of such shares of stock, if any, which might thereafter be disposed of to actual settlers, subject to the lien of the plaintiff under said act of Congress, the laws of this state and the said contracts with the state to secure the unpaid portion of the water rights so sold; that the owners and holders of such shares of stock constitute the only persons who use or are entitled to the use of water conveyed and distributed through said canal; that no water is sold or rented or was or is allowed or permitted to be sold or rented from said canals or ditches so assessed for taxation; that the assessor of Lincoln county, in the discharge of his duties as he construed them, assessed the plaintiff for the year 1913 for certain portions of said irrigation system so constructed, to wit: 69.25 miles of canal at an assessed valuation of $2,084.80 per mile, and of a total value for taxation of $144,372.40; that the property so assessed was and is exempt from taxation under sec. 1644, Rev. Codes, as amended by Laws of 1911, p. 565, and the act of the Special Session of the Legislature (Sess. Laws 1912, p. 21), and particularly of subd. N of sec. 4 of the act of the legislature approved March 13, 1913 (Laws 1913, p. 176), and that said assessment and taxes based thereon were and are illegal, unwarranted, inequitable and void.

. There are some allegations in regard to the action of the board of county commissioners sitting as a board of equalization and of the protest made upon the payment of said taxes. The complaint concludes with a prayer for judgment in the sum of $1,623.54, the amount of taxes paid, with interest and costs of suit.

The defendants demurred to the complaint on the following grounds: 1. Insufficiency of facts stated; 2. Ambiguity; 3. Lack of jurisdiction. The demurrer was sustained as to the first ground and the plaintiff declining to plead further, judgment was entered dismissing the action. From that

judgment this appeal is taken and the error complained of is the action of the court in sustaining the demurrer and entering judgment.

The protest against the payment of such taxes is quite lengthy and sets forth in detail the grounds of said protest, and avers that neither in law nor in equity are the reservoirs, canals, ditches and water rights forming the irrigation system referred to subject to taxation under the laws of this state.

The Carey Act (28 Stats. at Large, pp. 372–422) authorizes the Secretary of the Interior to contract with and agree to patent to the state of Idaho and other arid states a limited area of public lands upon certain conditions. By such contract the United States binds itself to donate, grant and patent to the state, free of cost for survey or price, certain desert lands as the state may cause to be irrigated, reclaimed, occupied and cultivated by actual settlers, as is required of citizens who may enter land under the desert land law, and any state contracting is authorized to make all necessary contracts to cause the said lands to be reclaimed and to induce their settlement and cultivation in accordance with and subject to the provisions of said act, and as fast as any state may furnish satisfactory proof according to such rules and regulations as may be prescribed by the Secretary of the Interior that any of said lands are irrigated, reclaimed or occupied by actual settlers, patents will be issued to the state or its assigns for said land so reclaimed and settled.

Said act was amended June 11, 1896 (29 Stats. at Large, p. 434), as follows:

"That under any law heretofore or hereafter enacted by any state, providing for the reclamation of arid lands, in pursuance and acceptance of the terms of the grant made in section four of an act entitled 'An Act making appropriations for the sundry civil expenses of the Government for the fiscal year ending June thirtieth, eighteen hundred and ninety-five,' approved August eighteenth, eighteen hundred ninety-four, a lien or liens is hereby authorized to be created by the state to which such lands are granted and by no other

authority whatever, and when created shall be valid on and against the separate legal subdivisions of land reclaimed, for the actual cost and necessary expenses of reclamation and reasonable interest thereon from the date of reclamation until disposed of to actual settlers; and when an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim a particular tract or tracts of such lands, then patents shall issue for the same to such state without regard to settlement or cultivation: Provided, That in no event, in no contingency, and under no circumstances shall the United States be in any manner directly or indirectly liable for any amount of any such lien or liability, in whole or in part."

The state of Idaho accepted the provisions of the original Carey Act in 1895. (Sess. Laws 1895, p. 219.) Said act of the legislature provides, among other things, the procedure for making application by persons or corporations desiring to contract with the state for the reclamation of desert lands and the condition under which contracts shall be entered into by the state and the provisions of such contract.

Sec. 1629, Rev. Codes, provides, among other things, that any person, company or association furnishing water for any tract of land shall have a first and prior lien on said water right and land upon which said water is used, for all deferred payments for such water right; said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner and possessor of said land; said lien to remain in full force and effect until the last deferred payment for the water right is fully paid and satisfied according to the terms of the contract under which said water right was acquired.

The form of the contract with the settler in use by the construction company and which was approved by the state is contained in the transcript on appeal.

It was under the provisions of the Carey Act and the statutes above referred to that the contracts were made with the state by the appellant for the construction of the irriga-

tion works, dams, reservoirs, headgates, canals, etc., involved in this action.

The question is directly presented as to whether, under the provisions of the constitution and laws of this state, the interest of the construction company in said works and water right is exempt from taxation.

Exemption from taxation had been provided by the legislature prior to statehood (sec. 1401, Rev. Stats. of 1887), but the provision exempting irrigation canals, ditches and water rights appurtenant thereto was first enacted in 1899 (Laws 1899, p. 220) by adding sec. 1402 to the Revised Statutes of 1887, and is as follows:

"The following property is exempt from taxation:

"All irrigating canals and ditches and water rights appurtenant thereto, when the owner or owners of said irrigating canals and ditches use the water thereof exclusively upon land or lands owned by him, her or them; *Provided,* In case any water be sold or rented from any such canal or ditch, then, in that event, such canal or ditch shall be taxed to the extent of such sale or rental."

Said section in the form above quoted was carried into the Revised Codes of 1909, as sec. 1644, subd. 12.

At the Special Session of the Legislature in 1912 (Laws 1912, p. 20), the subdivision above referred to was amended to read as follows:

"Sec. 1644. The following property is exempt from taxation: . . . .

"L.  All irrigation canals and ditches and water rights appurtenant thereto, when the owner or owners of said irrigating canals or ditches use the water thereof exclusively upon land or lands owned by him, her or them and situated wholly within this State; Provided, In case any water be sold or rented from any such canal or ditch, then, in that event, such canal or ditch shall be taxed to the extent of such sale or rental."

The history, purpose and motive for this change in said section may be found by a reference to a decision by Judge Dietrich of the United States district court, in *Spokane Valley*

*Land & Water Co. v. Kootenai County,* 199 Fed. 481, in which case exemption from taxes in Idaho was claimed for irrigation canals and water rights appurtenant thereto where water was conveyed to, and principally used within, the state of Washington. That case was pending but not decided at the time the legislature changed the wording of the paragraph above quoted so as to limit the exemption to canals or ditches supplying water to lands situated wholly within this state.

The latest and most significant change in the wording of this paragraph was made by the legislature at its session in 1913 as a part of the general revenue law passed at that session (see Session Laws 1913, p. 173). Paragraph "N" of sec. 4 of said general revenue law, which law is applicable to the exemptions claimed in this case, is as follows:

"Irrigation canals and ditches and water rights appurtenant thereto when no water is sold or rented from any such canal or ditch, only to the extent that the water conveyed by such canal or ditch is used to irrigate lands within this state; Provided, That in case any water be sold or rented from any such canal or ditch to irrigate lands within this state, then, and in that event, such canal or ditch shall be assessed for taxation to the extent that such water is so sold or rented."

The foregoing constitute the principal statutory provisions having a bearing upon the question at issue here, so far as our attention has been called to them.

It is alleged in the complaint that no water has been sold or rented from said system except as water rights were sold to the settler under the provisions of said contracts, and that the unsold water rights or the water represented thereby has not been sold or rented, and that the appellant has no right or authority under the law to sell or rent such water and has not done so, nor is the company using such unsold water in the irrigation of its own or any lands whatever. Those allegations are admitted by the demurrer.

It is clear from the provisions of said Carey Act and the amendments thereto, and the statutes of the state applicable to said act, that companies like the defendant are treated

by the state as, and are in effect nothing but construction companies engaged in constructing irrigation works under contract with the state, and their remuneration is limited by the provisions of the Carey Act and the provisions of sec. 1629, Rev. Codes, to the actual cost of construction and the necessary expense of reclamation and reasonable interest thereon.

It has been the custom of the state land board at the time a contract is entered into to fix a sum which shall represent such actual cost of construction and this practice has been upheld by this court in the case of *Idaho Irr. Co. v. Pew*, 26 Ida. 272, 141 Pac. 1099. It is apparent that the law does not intend that profit shall accrue to the construction company, and it is clear that the construction company is not the owner of the works constructed by it nor of the water right connected therewith, for under the provisions of said sec. 1629, the construction company is given a first and prior lien on the water right and land upon which the said water is used for all deferred payments for such water right, and under no reasonable construction of such law can it be held that the construction company is the owner of either the water right or the system, but is only given the right to sell them for the purpose of reimbursing it for the cost of construction.

The only means of remunerating the construction company is by the sale of the water rights. The state land board fixes the price per acre to be charged for such water rights by dividing the cost of reclaiming the land by the number of acres to be reclaimed, and when all of the water rights connected with such system have been disposed of, the construction company has, at least in theory, been reimbursed for its outlay; provided that purchasers of such water rights pay the purchase price for them. The water rights unsold cannot be considered in the ordinary sense as assets of the construction company, since water rights remaining unsold represent rather a liability of the construction company which can only be met by the sale of the water rights as provided by law.

The method provided for a transfer of the entire irrigation system from the company to the settlers would indicate that it was never the intention of the legislature to tax such system or the unsold shares in said system, since under the provisions of the Carey Act and the statute every purchaser receives certificates of shares of stock corresponding in number to the number of acres in his entry, which shares carry with them the title and ownership to a proportionate interest in the dam, canals, reservoir and water rights of the company, based upon the number of shares finally sold. The construction company's interest in the reservoirs, dams, water rights, etc., is represented by the lien provided by law to cover the cost of construction. Said sec. 1629 authorizes the state to create a lien to cover the cost of construction with interest, and this lien represents the amount of money which the company has expended on which it has not received any return from those purchasing water rights.

We refer to these matters for the purpose of showing the history and intent of the statutes above referred to. The original provision exempting irrigation canals, ditches, water rights, etc., from taxation, enacted in 1899, above referred to, rested the exemptions from taxation upon the use by the owner or owners of such canals and ditches of the waters conveyed thereby. The amendment by the Special Session of 1912 (Laws 1912, p. 21) simply added the further condition that such irrigated lands be situated wholly within the state, clearly indicating that the system within the state which irrigated lands situated wholly without the state would be subject to taxation. Under that statute, if the water should be sold or rented it did not defeat the exemption but made such canal or ditch subject to taxation to the extent of the water sold or rented. By the laws of 1913 (p. 173), the reference to the use of water exclusively by the owner or owners of the ditch or canals was dropped, and in language so clear as not to be liable to misconstruction, exempted all irrigation ditches, canals and water rights appurtenant thereto when no water is sold or rented from any such canal or ditch, and emphasized its intention so to do by enacting a pro-

viso that in case any water be sold or rented, then and in that event the canal or ditch shall be assessed "to the extent that such water is so sold or rented." This provision clearly exempts a system where the water is not sold or rented. This provision clearly negatives the idea that such exemption does not apply to a canal or ditch where the water is not rented or sold, but does apply to a ditch and water therein "to the extent that such water is sold or rented."

The language employed by the legislature in the enactment and re-enactment of the subdivisions above referred to amounts to a legislative construction of the statute and shows plainly that it was the intention of the legislature to place ditches and canals from which water was sold or rented in one class and these from which no water is sold or rented in a different class. Such is clearly the effect of these statutes.

Serious complications might arise from a taxation of these unsold water rights and the irrigation system with which they are connected and the sale of the same for delinquent taxes. The purchasers at such tax sales would procure a tax title to such water rights and system and would not be bound by the contract of the state with the construction company to resell such rights to settlers for the price agreed upon between the construction company and the state. But aside from this it is clear that said irrigation system or the unsold water rights connected therewith are exempt from taxation under the laws of this state.

The question is presented whether the tax which was paid under protest in this case can be recovered back by the construction company.

The cases of *Shoup v. Willis*, 2 Ida. 120 (108), 6 Pac. 124; *Weiser National Bank v. Jeffreys*, 14 Ida. 659, 660, 95 Pac. 23, and *Bengoechea v. Elmore County*, 23 Ida. 397, 130 Pac. 459, determine this question against the contention of the respondent. The assessment in the case at bar was not an erroneous assessment, neither was it made through clerical or other error. It was an assessment made upon property that was exempt from taxation and involved property which was illegally assessed, and the appellant in this case had the

right, under the law, to bring this action against the county to recover the amount of said taxes paid under protest on the property exempt from taxation.

The judgment of the trial court must therefore be reversed, and it is so ordered, and the cause remanded, with instructions to overrule the demurrer and to permit the defendants to answer, if they desire to do so. Costs are awarded to the appellant.

· Budge and Morgan, JJ., concur.

Petition for rehearing denied.