(Nos. 5786, 5791. May 23, 1932, as modified June 16, 1932.)

CHAS. H. ANDREWS, Appellant and Cross-Respondent,
v. NORTH SIDE CANAL COMPANY, Respondent
and Cross-Appellant; F. G. SMYTH et al., Respondents.

[12 Pac. (2d) 263.]

118

Bissell & Bird, for Appellant and Cross-Respondent.

Walters, Parry & Thoman and Wayne A. Barclay, for Respondent and Cross-Appellant.

BUDGE, J.—During the years 1925 to 1929, inclusive, John A. Dumbolton was the record owner of the SE. ¼ SW. ¼, Sec. 34, T. 6 N., R. 14 E., B. M., in Gooding county, comprising 40 acres, together with the appurtenances which included a water right evidenced by 40 shares of the capital stock of the North Side Canal Company, respondent and cross-appellant. The land and water right, classified as agricultural land, were duly assessed as an entity by the county officials of Gooding county during each of said years. The taxes so assessed were not paid and by reason of nonpayment therefor for the year 1925 the tax collector conveyed the property to Gooding county. On May 12, 1930, the property was sold to Andrews, appellant and cross-respondent and deed was issued from Gooding county to him, and as owner and holder of the property under the tax deed brought this action to quiet title thereto. All defendants defaulted except the North Side Canal Company, which appeared and answered. The North Side Canal Company is a Carey Act operating company and the land involved is under its project and irrigated therefrom. This land, together with 40 acres adjoining, was originally owned by one Beck, to whom, on or about April 23, 1918, the North Side Canal Company issued and delivered a certificate for 80 shares of its capital stock, representing a water right equal to one share for each of said 80 acres. Each year from and including 1926 to and including 1929 the North Side Canal Company levied assessments for operation and maintenance against the land in question here, none of which have been paid. Upon nonpayment of each of said assessments the North Side Canal Company filed claims of lien and commenced actions to foreclose the same, all in due time, which facts are pleaded in its answer.

The cause was tried by the court. Findings of fact and conclusions of law were made and filed and judgment was entered quieting title to the land and water right in Andrews with the following proviso contained therein, to wit:

"Provided, however, that the defendant, North Side Canal Company, shall be required to transfer said water stock, so appurtenant to the above described land, on the books of the company and deliver water certificate representing such water to the plaintiff, only upon said plaintiff's paying to said defendant corporation all delinquent maintenance lawfully assessed against said water stock for the years 1926, 1927, 1928 and 1929, together with statutory interest and charges thereon.''

From the above-quoted portion of the decree Andrews appeals. The North Side Canal Company appeals from that part of the decree quieting title in Andrews to the land and water right.

We shall first dispose of the cross-appeal of the North Side Canal Company but shall not undertake to discuss at great length the numerous assignments of error relied upon by cross-appellant and shall dispose of such as we deem of sufficient importance in reaching a decision.

It is contended by cross-appellant that the trial court erred in finding that the land and water right appurtenant thereto were, during the year 1925 and thereafter, subject to assessment and taxation and were actually assessed and taxed for that period, and in holding that the water right was not exempt from taxation, and argues: (1) That the water right was not an appurtenance to or an integral part of the land and was not in fact assessed, and the sale of the land for taxes vested no title to the water in Gooding county, and no title thereto passed by its deed to Andrews; and (2) That the water right is specifically exempted from assessment and taxation by the provisions of C. S., secs. 3096, 3099 (as amended Sess. Laws 1921, chap. 106) and 3100.

In 1925, when the assessment in question was made and taxes were levied, it was provided by the following sections:

C. S., sec. 3096: "All property within the jurisdiction of this state, not expressly exempted is subject to assessment and taxation.''

C. S., sec. 3099 (as amended Sess. Laws 1921, chap. 106) : "The following property is exempt from taxation: . . . .

"14. Irrigation canals and ditches and water rights appurtenant thereto when no water is sold or rented from any such canal or ditch, only to the extent that the water conveyed by such canal or ditch is used to irrigate lands within this State; Provided, That in case any water be sold or rented from any such canal or ditch to irrigate lands within this State, then, and in that event, such canal or ditch shall be assessed for taxation to the extent that such water is so sold or rented. . . . . "

C. S., sec. 3100: "Property exempted from taxation under the preceding section of this chapter shall not be listed or assessed. . . . . "

■ The general rule would seem to be that in considering statutes purporting to grant exemptions from general taxation, the same are to be strictly construed. Exemptions are never presumed.

"A grant of exemption from taxation is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption." (37 Cyc. 891.)

To the same effect see: *Kootenai v. Seven-Seven Co.*, 32 Ida. 301, 182 Pac. 529; *Salisbury v. Lane*, 7 Ida. 370, 63 Pac. 383; *Bistline v. Bassett*, 47 Ida. 66, 272 Pac. 696; 26 R. C. L. 313, sec. 274; 24 Cal. Jur. 89, sec. 73.

■ C. S., sec. 3099, subd. 14, as amended, *supra*, when construed in the light of the foregoing authorities, exempts from taxation water rights that are *appurtenant to canals and ditches* when no water right is sold or rented from such canals or ditches. Here the water right is no longer appurtenant to the canal of cross-appellant, as such appurtenancy was transferred from the canal to the land as soon as title passed from the United States to the state, C. S., sec. 3018, providing:

"The water rights to all lands acquired under the provisions of this chapter shall attach to and become appurtenant to the land as soon as title passes from the United States to the state."

See, also, *Leland v. Twin Falls Canal Co.*, 51 Ida. 204, 3 Pac. (2d) 1105; *Milner v. Leland*, 51 Ida. 214, 4 Pac. (2d) 665. As long as the water right was appurtenant to the canal as an unsold water right it and the canal were exempt from assessment and taxation. When the title to the land passed from the United States to the state and the water right was thus dedicated to the land, it became a complement or appurtenance of the land (C. S., sec. 5556), and, for the purpose of taxation, one of the "rights and privileges thereto belonging" within the meaning of C. S., sec. 3101. Therefore, when the land was taxed, such taxes included the taxes on the water right, as an appurtenance. As said in *Twin Falls S. R. L. & W. Co. v. Twin Falls County*, 231 Fed. 769, 771:

" . . . . after the water right becomes attached to the land, it contributes its value thereto, and thus bears its proper burden of taxation in the assessment of the land."

See, also, *Idaho Irr. Co., Ltd., v. County of Lincoln*, 28 Ida. 98, 152 Pac. 1058; *North Side Canal Co. v. State Board of Equalization*, 17 Fed. (2d) 55.

The case of *Bennett v. Twin Falls etc. Co.*, 27 Ida. 643, 150 Pac. 336, cited and relied upon by cross-appellant, is distinguishable from the instant case. There it was held that the water right involved was exempt from taxation under the section above referred to, for the reason that the water right was appurtenant to the canal and had not become appurtenant to the land, while in the instant case the water right had become appurtenant to the land.

We are not in accord with cross-appellant's contention that a Carey Act water right, such as is involved here, has an independent property existence separate and apart from the land to which it has been dedicated, and therefore is not subject to assessment and taxation as an appurtenance. We concede that there is no separate assessment and taxation of

a water right as an entity, as the assessment and taxation of the land includes the assessment and taxation of the water right as an appurtenance.

This court has repeatedly held that a water right may be sold and transferred separately from the land to which it has become appurtenant (*Village of Hailey v. Riley*, 14 Ida. 481, 95 Pac. 686, 17 L. R. A., N. S., 86; *Hard v. Boise City Irr. etc. Co.*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Bennett v. Twin Falls etc. Co., supra; Sanderson v. Salmon River C. Co., Ltd.*, 34 Ida. 145, 199 Pac. 999), the effect of such sale and transfer being to transfer the appurtenance of the water right from one tract of land to another. In other words, the water right is a separable appurtenance of the land to which it is dedicated and on which it is used. (*Sanderson v. Salmon River C. Co., Ltd., supra.*)

By the provisions of C. S., secs. 3018, 3060, 5556 and 5580, the announcements in *Leland v. Twin Falls Canal Co., supra, Milner v. Leland, supra,* and *Hunt v. Bremer*, 47 Ida. 490, 276 Pac. 964, the rule is established that where a Carey Act water right has been dedicated to and used upon the land to which it has been dedicated pursuant to the contract between the Canal Company and the settler, it becomes and remains (in the absence of showing of separation) an appurtenance to such land and is real property in individual ownership. C. S., sec. 3060, prohibits a Carey Act water right from being separated from the land to which it has been dedicated until all taxes have been paid. C. S., sec. 3101 (as amended, Sess. Laws 1925, chap. 74), provides:

"Real property, for the purposes of taxation shall be construed to include land, . . . . and all rights and privileges thereto belonging, or in anywise appertaining, . . . . and all other property which the law defines, or the courts may interpret, declare and hold to be real property under the letter, spirit, intent and meaning of the law, for the purposes of taxation. . . . . "

C. S., sec. 5325, provides:

"Real property or real estate consists of:

"1. Lands, . . . . and water rights . . . .

"3. That which is appurtenant to land."

The land in question was assessed as "agricultural land," the assessor testifying that only land to which a water right was appurtenant was so assessed, and where no water right was appurtenant the land was assessed as "waste land."

We are clearly of the opinion that the water right in the instant case is real estate, and under a fair construction of the statutes to which reference has been made, is appurtenant to and an integral part of the land to which said water right has been dedicated; that it passed with the land when conveyed; and that its assessment and taxation were included within the assessment and taxation of the land to which it was appurtenant.

The next question involves an alleged noncompliance by the county officers of Gooding county with statutes relating to procedure leading up to and culminating in the conveyance of the land in question to Gooding county, cross-appellant insisting that the court erred in concluding that the irregularities and informalities committed by the taxing officers in such proceedings were not prejudicial to the cross-appellant and that there had been a substantial compliance with the statutory requirements in regard thereto, and in holding the tax deed valid.

The record owner of the land is not here contesting the validity of the tax deed. Its validity is questioned by cross-appellant, whose claim of interest in the land and water right is grounded upon its liens based on unpaid assessments for maintenance and operation. Where such questions are raised, the burden is cast upon the party seeking to invalidate the tax deed to show that he was prejudiced or injured by noncompliance with such statutes before the tax deed will be declared void.

It is insisted by cross-appellant that:

1. The red ink delinquency entry of 1925 taxes called for by C. S., sec. 3228, was not made on the 1926 assessment-roll.

2. The notation as to 1925 taxes being unpaid, required by C. S., sec. 3235, was not shown on the 1926 tax notice.

3. C. S., sec. 3258, as amended by Laws of 1925, p. 46, prescribing the kind and manner of service of notice of pending issuance of tax deed, was not complied with in the following particulars:

. (a) No diligent inquiry was made to ascertain the place of residence of the record owner of the property.

(b) No copy of the published notice of tax delinquencies was mailed to anyone.

(c) The published notice of tax delinquencies does not give the amount of tax, penalty or interest due.

(d) The notice posted upon the premises was not posted until October 19, 1929.

(e) The notice posted upon the premises did not give date of delinquency entry, name of the person to whom the property was assessed, or the amount of tax, penalty or interest.

4. The affidavit filed by the tax collector under C. S., sec. 3259, is insufficient to support a tax deed in the following matters:

(a) It does not state with particularity the facts relied upon to constitute compliance with C. S., sec. 3258, but instead gives conclusions of law only.

(b) It affirmatively shows that the tax collector did not post notice upon the premises until October 19, 1929.

(c) It affirmatively shows that no copy of the published notice of tax delinquencies was mailed to anyone.

Taking up the first two asserted irregularities, it is not believed that the absence of the red ink delinquency entry as required by C. S., sec. 3228, as amended Sess. Laws 1923, chap. 138, and the further absence of the delinquency entries as required by C. S., sec. 3235, from the 1926 tax notices are sufficient to invalidate the tax deed. There is no evidence which shows or tends to show that cross-appellant was or could have been misled, injured or prejudiced by the failure of the county officials to technically comply with the above statutory provisions. The record owner, for whose benefit such red ink delinquency entry and notation of unpaid taxes for previous years are required to be made, would

not be in a position, much less cross-appellant, to complain that the same were not made when he has neither paid nor tendered taxes for the subsequent years or for the year of the delinquency, particularly where, as here, it is shown that he has abandoned the land, departed from the state without furnishing the tax collector with forwarding address, and is not seeking to redeem from the delinquency sale or to pay taxes due for subsequent years. In this respect this case differs from the case of *Fix v. Gray*, 26 Ida. 19, 140 Pac. 771, and *Parsons v. Wrble*, 21 Ida. 695, 123 Pac. 638, relied on by cross-appellant, where taxes were paid for subsequent years. Indeed, in the latter case, the court said (p. 701):

"If the property owner should not pay his taxes during any one of the three subsequent years allowed for redemption, then it is difficult to see how he could be deceived or misled by failure of the assessor to make the red ink entry. If he allows his property to go for four continuous years without paying any taxes on it and fails to call on the tax collector during the three years of redemption, it would seem that the failure to make the red ink entry of the assessment would in no way prejudice him or affect his substantial rights in the least."

Under the facts of this case we are not inclined to hold that the tax deed is void upon these grounds.

We come now to the question raised under C. S., sec. 3258, as amended Sess. Laws 1925, chap. 33, prescribing the kind and manner of service of notice pending the issuance of tax deed, which cross-appellant contends was not complied with, in that it does not affirmatively appear either that the record owner was not available for personal service or that service was made upon the person in possession or occupancy of the land. The record conclusively shows that the record owner was absent from the state; that the premises were unoccupied; that every reasonable effort was made to ascertain his whereabouts, including a search of all past addresses on the assessment-roll from 1924 to 1929, inspection of abstracter's books, and inquiry of various individuals; and that notices were mailed to different addresses based

upon the best information obtainable as to his residence, which notices were returned unopened. California has held that the tax collector need not go beyond the tax records in searching for the last known address of the owner. (*Kehlet v. Bergman,* 162 Cal. 217, 121 Pac. 918; *Crouch v. Shafer,* 177 Cal. 154, 169 Pac. 1019; *Jacoby v. Wolff,* 198 Cal. 667, 247 Pac. 195.) We are therefore convinced that in these respects the statute was substantially complied with.

Cross-appellant urges that under the statute, where no person is in actual possession of the land, and if the person in whose name it stands cannot be found in the state, the tax collector must post a copy of said notice upon the land, publish a copy of said delinquency entries and mail a copy of said notice to the person in whose name the land stands of record, at his last known place of address, and insists that a printed copy of the published notice was not mailed to the last known place of address of the record owner. We are not inclined to the view that C. S., sec. 3258, as amended, *supra,* is subject to such technical interpretation but are of the opinion that it is immaterial whether the notice mailed is written or printed, or partly written or partly printed, or in what form it may be prepared. The notice is what is required to be given, and this was done.

It is also contended that the published notice of the tax delinquencies did not give the amount of the taxes, penalty or interest due. An examination of the notice discloses that it contains the necessary information required by C. S., sec. 3258, as amended, *supra.*

Complaint is made that the notice posted upon the premises was not posted until October 19, 1929, 11 days late. This objection is without merit. As was held in *Rice v. Rock,* 26 Ida. 552, 144 Pac. 786, the notice is for the purpose of ending the period in which redemption could be made and not for the purpose of divesting the holder of the tax sale certificate of his right to a deed for all time.

It is likewise urged that the notice posted upon the land failed to give the date of the delinquency entry, the name of the person to whom the property was assessed

or the amount of the tax, penalty or interest. An examination of the notices discloses that it was addressed to John A. Dumbolton and unknown parties in interest of the land in question, from which it is reasonable to infer that the property was assessed in these names; that it does state that the taxes for 1925 were delinquent; that the time for redemption expired on January 6, 1930; and that Gooding county was the owner of Certificate No. 743, which covered the 1925 taxes on the property in question. This was a substantial compliance with the statute, which is all that is required.

We come now to the sufficiency of the affidavit of the tax collector, which is provided for under C. S., sec. 3259. We have examined the affidavit and while it may be subject to some of the objections urged, all of the jurisdictional facts are substantially shown therein. As was said in *Williams v. City of Caldwell*, 19 Ida. 514, 114 Pac. 519, 521:

"The actual existence of the facts required to be shown by the affidavit is the thing which confers jurisdiction. The affidavit is merely the proof that the jurisdictional facts exist, but the failure to make the proof does not do away with the facts which the proof would show."

The affidavit, by the provisions of C. S., sec. 3259, was *prima facie* evidence that the notice required by .C. S., sec. 3258, as amended, had been given, and also made a *prima facie* showing as to other matters, none of which were rebutted by cross-appellant.

 C. S., sec. 3258, as amended, *supra*, with reference to lienholders, provides that the holder of a recorded lien upon the property, if he has requested such notice, is entitled to receive a notice giving a description of the land, the delinquency entry, the name of the owner, for what year taxed and when the time of redemption will expire. There is no evidence in the record that the cross-appellant requested that such notice be given, which being true, it was not entitled thereto.

 In view of the foregoing, we think we are correct in holding that by virtue of the provisions of C. S., secs.

3261 and 3262, the tax deed is *prima facie* evidence of the regularity of all proceedings for the assessment to the execution of the tax deed, and the burden rested upon cross-appellant to overcome the statutory presumption that the tax deed was valid by proof of its invalidity, which it has failed to do. (*Co-operative Savings & Loan Assn. v. Green,* 5 Ida. 660, 51 Pac. 770.) The trial court did not err in holding the tax deed valid.

We come now to the question urged by appellant Andrews, namely, that the trial court erred in finding, concluding and decreeing that the water stock certificate is held and owned subject to by-law of the North Side Canal Company providing:

" . . . . no transfer of stock shall be made upon the books of the Corporation, until all indebtedness to it or any other charges authorized by these by-laws, of the person in whose name the stock is registered, shall have been paid," and that before said stock can be transferred upon the books of said corporation to the name of appellant Andrews, all assessments of the North Side Canal Company on the land in question for the years 1926 to 1929, inclusive, together with statutory interest and charges thereon must be paid. In other words, such provision makes the lien, based on assessments for maintenance and operation, prior to the general lien for taxes. While appreciating the fact that a hardship is worked on the Carey Act operating company under such circumstances, the law is well settled in this jurisdiction that a Carey Act operating company's lien for maintenance and operation charges is inferior to the lien of general taxes. (C. S., sec. 3040, as amended Sess. Laws 1925, chap. 107; *Portneuf-Marsh Valley Canal Co. v. Brown,* 274 U. S. 630, 47 Sup. Ct. 692, 71 L. ed. 1243; *Continental & Commercial Trust & Savings Bank v. Werner,* (on rehearing) 36 Ida. 602, 215 Pac. 458; *Kieldsen v. Barrett,* 50 Ida. 466, 297 Pac. 405.) The rule would seem to be established that a tax deed conveys absolute title to the grantee free of all liens and incumbrances which may have attached prior to the date of such deed. (C. S., sec. 3263,

as amended Sess. Laws 1921, chap. 232; C. S., sec. 3423, as amended Sess. Laws 1929, chap. 216; *Heffner v. Ketchen,* 50 Ida. 435, 296 Pac. 768; 26 R. C. L. 402, sec. 360.) In *Leland v. Twin Falls Canal Co., supra,* it is held that a stock certificate such as we have in the instant case is inseparable from the water right represented thereby. To the same effect is *Milner v. Leland, supra,* and *Riverside Land Co. v. Jarvis,* 174 Cal. 316, 163 Pac. 54. To hold that the by-law to which reference has been made would give to the North Side Canal Company a lien superior to that for taxes would be to uphold a by-law in violation of C. S., sec. 4707, which as then in effect provided:

"Every corporation formed under this title must, within one month after filing articles of incorporation, adopt a code of by-laws for its government *not inconsistent with the laws of congress and of this state. . . . .*"

The by-law in question in so far as it attempts to make liens for assessment and maintenance superior to the lien for general taxes, is inconsistent with the laws of this state and therefore void. (14 C. J. 364, sec. 463; 1 Fletcher on Corporations, 990; *Gaffney v. Royal Neighbors of America,* 31 Ida. 549, 174 Pac. 1014.)

If the lien for taxes is superior to all other liens, it makes no difference what the by-laws may contain or what the certificate on its face may recite. There is no evidence in the record that Gooding county had notice or knowledge of what the by-laws contained or what the certificates on their face recited. Appellant Andrews was the purchaser from the county and there is no evidence that he had such notice or knowledge, and there is no rule of law that we know of that would require him to investigate for the purpose of ascertaining what the by-laws provided or what the certificates of stock on their face recited. In *Leland v. Twin Falls Canal Co., supra,* it was held in effect that a stock certificate exactly like the one under consideration was a part of the land to which the water it represented was appurtenant, and that such certificate passed as a matter of law to the one purchasing the land at mortgage

foreclosure sale. A sale for taxes is similar to a mortgage foreclosure sale. It is said in that case, quoting from *Ireton v. Idaho Irr. Co.*, 30 Ida. 310, 164 Pac. 687:

"Such shares are muniments of title to the water right, are inseparable from it, and ownership of them passes with the title which they evidence."

We have carefully examined each and all of the various assignments of error urged by appellant and cross-appellant and have reached the conclusion that the trial court erred in including in its decree the proviso to which reference has been made, and that the decree must be amended to eliminate the same, and when so amended the decree will be affirmed.

Costs in both appeals are awarded to appellant Andrews.

Givens, Varian and Leeper, JJ., concur.