(July 7, 1915.)

## I. E. BENNETT, Plaintiff, v. TWIN FALLS NORTH SIDE LAND & WATER CO., a Corporation, and NORTH SIDE CANAL CO., LTD., a Corporation, Defendants.

[150 Pac. 336.]

CAREY ACT LANDS—TAXATION OF—CONSTRUCTION COMPANY—WATER RIGHTS—CONSTRUCTION OF CONTRACTS AND STATUTES—TAXATION OF WATER RIGHTS—WATER RIGHT APPURTENANT TO LAND—APPURTENANT SEPARABLE FROM LAND—WATER RIGHT NOT TAXABLE.

1. Under a Carey Act project where a construction company has entered into a contract with the state to initiate the appropriation of water and to construct canals, ditches and reservoirs for the irrigation of the land within the project, and has also the right to contract with settlers upon such lands to sell them water rights, and does contract with the settler or entryman to sell him a water right for his land, and the settler agrees to pay for such water right in annual instalments, and thereafter when his land becomes subject to taxation his land is taxed and he fails to pay the taxes, and the land is sold at tax sale and a tax deed is thereafter issued conveying the land to the purchaser or his assignee, such tax deed does not convey the water right purchased by the entryman of such land for the irrigation thereof.

2. Under the provisions of sec. 1629, Rev. Codes, the water rights referred to therein do not attach and become such an appurtenance to the land that the title to such water right is conveyed under a tax deed which conveys the title to the land where the purchase price of the water right has not been paid.

3. Under the provisions of sec. 3240, Rev. Codes, all of the waters of the state when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state, are declared to be the property of the state.

4. Under the provisions of secs. 4 and 5, art. 15, of the state constitution, the state has power and authority to direct and control the appropriation of the unappropriated waters of the state, and, when the requirements of the statute are complied with, the right gained by the appropriator is a right to the use of the water.

5. Under the provisions of sec. 3056, Rev. Codes, water rights are declared to be real property or real estate.

6. When one has legally acquired a water right, he has a property right therein that cannot be taken from him for public or

private use except by due process of law and until a just compensation shall be paid therefor.

7. A water right is an independent right and is not a servitude upon some other thing, and is an incorporeal hereditament, being neither tangible nor visible.

8: The owner of a water right, by purchase or original appropriation, may sell the water right separate and apart from his land.

9. The provisions of sec. 1644, Rev. Codes, as amended by the Laws of 1913, p. 242, exempt from taxation such a water right as the one involved in this case.

10. *Held,* under the settlers' contract that the title to the water right does not vest in the entryman until he makes full payment for the same.

11. The provisions of sec. 1629, Rev. Codes, do not make the water right an inseparable appurtenance to the land, or such an appurtenance that a tax deed transferring the title to the land would also transfer the unpaid for water right.

12. *Held,* that the purchaser of a tract of Carey Act land at tax sale may be subrogated to all of the rights of the entryman so far as the water right is concerned, and may procure title thereto by making the payments provided for by the water contract and in accordance with its terms.

An original application for a writ of mandate to the defendants, commanding the Land & Water Company to immediately assign, transfer and set over to the plaintiff forty shares of the capital stock of the North Side Canal Company and to cancel a certain lien and commanding the Canal Company to deliver to the plaintiff certain water for the irrigation of the forty acres of land described in the petition. Alternative writ quashed ·and peremptory writ denied.

Paul S. Haddock, for Plaintiff.

In regard to the question as to who is the real owner of a water right represented by shares of stock in a water corporation, the courts have taken the view that the companies are in the nature of carriers, and that the real title to the water right rests in the owner of the land; that the most that can be said of the corporation is that whatever title it may hold is held in trust for the real and equitable owner, that is, the user of the water. (2 Wiel on Water Rights, chap. 57; *Hard*

*v. Boise City Irr. etc. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Creer v. Bancroft Land etc. Co.,* 13 Ida. 407, 90 Pac. 228; *Nampa etc. Irr. Dist. v. Gess,* 17 Ida. 552, 106 Pac. 993; 3 Kinney on Irrigation, 2651; *Idaho Fruit Land Co. v. Great Western Beet Sugar Co.,* 18 Ida. 1, 107 Pac. 989.)

We agree that a water right is a property interest which may at any time be separated from the land to which it was originally appurtenant, provided that this separation must be made by the person owning the land and the water right, and that the separation must not be to the injury or detriment of some other person. (*Hard v. Boise City Irr. Co., supra; Ramelli v. Irish,* 96 Cal. 214, 31 Pac. 41; *Union Mill etc. Co. v. Dangberg,* 81 Fed. 73, 115.)

Our contention is that the water right was appurtenant to the land at the time the tax lien attached to the land, and from that time on the state and county government acquired such an interest in said land and its appurtenance to wit, its water right, and the owner no longer had the right to separate his land and water until the said tax lien was satisfied. A mortgagee would certainly have the right to object to a mortgagor separating the water right from the mortgaged land because the mortgagee's security would then be almost entirely gone. The same principle would hold good with a mechanic's lien, a tax lien or any other lien. Shares of stock in a mutual water corporation such as the North Side Canal Company is are appurtenant to the land and will pass with a conveyance of the land. (*In re Thomas Estate,* 147 Cal. 236, 81 Pac. 539; *Bank of Visalia v. Smith,* 146 Cal. 398, 81 Pac. 542.)

"Water rights are real estate for the purpose of taxation but should not be assessed separately from the lands to which they are appurtenant." (1 Wiel on Irrigation, p. 300.)

A tax deed conveys the appurtenances that were assessed and included in the tax certificate of sale, and it does not make any difference whether the appurtenances were recited in the tax deed or not. (*Bank of Lemoore v. Fulgham,* 151 Cal. 234, 90 Pac. 936.)

Longley & Walters, for Defendants.

A water right is an independent property right, and is not a servitude upon some other thing (Kinney on Irrigation & Water Rights, secs. 769, 770), and an incorporeal hereditament, being neither tangible nor visible. (Kinney, sec. 771; *Custer Consol. Mines Co. v. City of Helena*, 45 Mont. 146, 122 Pac. 567.) It is not an inseparable appurtenance to land. (Kinney, secs. 1015, 1016.)

A tax sale of public land which is exempt from taxation conveys no title to the purchaser. (*Quivey v. Lawrence*, 1 Ida. 313; *Young v. Charnquist*, 114 Iowa, 116, 86 N. W. 205; *McGoon v. Scales*, 76 U. S. (9 Wall.) 23, 19 L. ed. 545.)

If the water right does not become an appurtenance to the land, either under the state law or contracts of the parties, by what theory can the holder of a tax deed claim it? (*Hailey v. Riley*, 14 Ida. 481, 95 Pac. 686, 17 L. R. A., N. S., 86.)

SULLIVAN, C. J.—This is an original application to this court for a writ of mandate to the Twin Falls North Side Land & Water Company, a corporation (which will hereafter be referred to as the Land & Water Company), and the North Side Canal Company, a corporation (which will hereafter be referred to as the Canal or Operating Company), commanding them to deliver water from their canal system to the plaintiff and to deliver forty shares of the capital stock of the Canal Company to the plaintiff, and to release the lien upon plaintiff's land created by the water contract with the Land & Water Company.

A general demurrer to the complaint was filed by the defendants, and it is conceded that the facts admitted by the demurrer are correctly set forth in defendant's brief, and are as follows:

1. The corporate existence of the North Side Land & Water Company and the North Side Canal Company, the parties defendant.

2. That the Twin Falls North Side Land & Water Company heretofore entered into a contract with the state of Idaho, under and pursuant to the terms of the federal law

known as the Carey Act, as well as the statutes of the state of Idaho relating thereto, and that under and by virtue of said state contract the Land & Water Company agreed to sell water rights or shares in the irrigation system to be constructed by it to every person making entry of lands upon the segregation. The contracts specifically provide that the water right and interest in the system should be paid for by the entrymen and as by the terms of the contract provided, and such right and interest to be evidenced by shares of stock in the Canal or Operating Company, such stock to be held by the Land & Water Company until at least 35% of the payments due have been made, when the owner shall become entitled to receive the stock and vote the same.

3. That the irrigation system has been constructed and fully completed and that the Land & Water Company have in all things complied with the state and settlers' contract, both as to constructing the irrigation system contemplated therein, and making the water available in a sufficient supply for the use of the contract holder.

4. That one Belcher made entry of a certain forty acres of land in section 10, township 9 south, range 16 E., B. M., in Lincoln county, and was the owner and holder of a contract with the Land & Water Company for the irrigation and reclamation of such land, as well as the water right therefor, to be evidenced by the stock hereinbefore referred to.

5. That Belcher by assignment sold and transferred such contract to one John M. Hale, who proceeding thereunder and pursuant to the laws of the state of Idaho, made proof of reclamation of said land, and received a final certificate of such proof from the state of Idaho.

6. That no patent has been issued from the United States on the said forty acres hereinbefore referred to.

7. That the said forty acres was duly and lawfully assessed for the year 1910, and that the taxes so levied for said year have not been paid and became delinquent, and said land was thereafter sold for taxes to Lincoln county; no redemption having been made, a tax deed issued to the county of Lincoln,

said county in turn transferring said land by deed to the plaintiff in this action.

8. The assessment above referred to against said property for the year of 1910 was upon the following valuation, as appears from the assessment-roll of said county, to wit:

Value of land .........................$240.00
Value of improvements ....................  25.00

Total valuation of property for taxation....$265.00

that there was no separate or independent assessment, either against the water right hereinbefore referred to or the shares of stock which evidenced the same, either by said county, the state or any municipal corporation for the year of 1910.

9. That no other or further payment has been made to the Land & Water Company upon the purchase price of the water right other than the sum of $120, and that there remains due and owing the Land & Water Company upon such water contract the balance of the consideration therefor in the sum of $1,280.

10. That the plaintiff in this action has tendered the canal company the maintenance charge and assessments for the year of 1915, and demands the delivery of water under said water contract; but has refused to make any of the payments due and matured thereon and has denied any obligation to pay the balance of said purchase price for the water right to the Land & Water Company.

11. That the settlers' contract specifically provides "that no water shall be delivered to the purchaser from said irrigation system while any instalment of principal or interest is due and unpaid."

The issues presented for determination are: Can one by his purchase of a tax deed to land which was included in a Carey Act segregation, and for which a water right has been contracted but not paid for, require the irrigation company to lose its right to and interest in such water right until paid for according to the terms of the contract under or by which said water right was purchased, and can he legally insist that the water company shall assign to him the shares of

stock representing said water right and insist that water be delivered to him for the irrigation of his land on the theory that such water had become an appurtenance or an integral part of the land and that the title to such water right goes with and is included in the tax deed?

The plaintiff concedes that the original owner of the water contract would have no right to receive water thereunder unless the payments required by the contract were made; but the plaintiff claims that his rights are superior to such original holder of the water contract because of the issuance of the tax deed, and contends that the water company loses its right and interest in such water right as well as the money due on such contract, simply because the water had become an appurtenance to the land and that it passed with the land to him as holder and owner of the tax deed.

The Land & Water Company, on the other hand, contends that the water right is a separate and distinct property right which does not become an appurtenance to the land in a strict legal sense; that is to say, by the use of the word "appurtenance" in the statutes and in the contract the water right does not lose its identity as a property right and become merged in the real estate and forever thereafter remain inseparable from it. It is contended by the Land & Water Company and the Canal or Operating Company that there is no fully matured water right vested in the entryman or in his successor, the plaintiff, until the water contract has been performed, or its terms complied with, and the rights to be secured by such purchase paid for.

It is also contended that under the laws of this state a water right is a separate and distinct right from the land on which the water is used or may become appurtenant, and any legislative enactment attempting to deprive an owner of such right without due process of law would be clearly unconstitutional.

The claim of the plaintiff, it appears, is based upon the following terms or provisions of the state and settlers' contract and the statutes:

Among other things the settlers' contract contains the following: "The water which the purchaser shall have a right to conduct and receive through said canal shall be used upon, and the water shall be dedicated and become appurtenant to, the following described land and no other." Then follows a description of said land. Under the constitution and laws of the state the ownership of the *corpus* of the water is in the state, and it could not be successfully contended that anyone could make "dedication" of something not owned by him. This would necessarily apply to the word "appurtenant." In paragraph 10 of said contract the following provision is found: "The sale of water rights to the purchaser shall be a dedication of the water to the lands to which the same is to be applied; such water right to be a part of and to relate to the water right belonging to said irrigation system."

The following provision in regard to Carey Act lands is found in sec. 1629, Rev. Codes: ". . . . The water rights to all lands acquired under the provisions of this chapter shall attach to and become appurtenant to the land as soon as the title passes from the United States to the state."

From the said contracts and statute, the following questions are presented: Can a holder of a tax deed to certain lands, the title to which had been acquired under the Carey Act, acquire a water right for the irrigation of such lands without paying for it? Does a construction company, proceeding under the Carey Act, by a tax deed executed upon the sale of the land for delinquent taxes, and where the tax was not levied upon the water right, absolutely lose the balance due on the purchase price for such water right under its agreement to construct an irrigation system and sell water rights therein, simply because the statute and contract provide that such water right shall be appurtenant to said land?

Under the provisions of sec. 3240, Rev. Codes, it is declared that all of the waters of the state when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state, are the property of the state. (*Walbridge v. Robinson*, 22 Ida. 236, 125 Pac. 812, 43 L. R. A., N. S., 240.) The state has power and

authority to direct and control the appropriation of such waters, and when the requirements of the statute are complied with, the right gained by an appropriator is a right to the use of the water.   (Secs. 4 and 5, art. 15, State Const.)   Under the provisions of sec. 3056, Rev. Codes, water rights are declared to be real property or real estate.   (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Clark v. Paddock,* 24 Ida. 142, 132 Pac. 795, 46 L. R. A., N. S., 475.)

When one has legally acquired a water right, he has a property right therein that cannot be taken from him for public or private use except by due process of law and upon just compensation being paid therefor.   (*Fisher v. Bountiful City,* 21 Utah, 29, 59 Pac. 520; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81.)   One who has acquired a legal water right can only be deprived of it by his voluntary act in conveying it to another, by abandonment, forfeiture under some statute, or by operation of law.   A water right is an independent right, and is not a servitude upon some other thing, and is an incorporeal hereditament, being neither tangible nor visible.   (Kinney on Irr. & Water Rights, secs. 769–771.)

It was held by this court in *Hard v. Boise City Irr. & Land Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407, that the owner of a water right acquired such a property right therein as was transferable to other lands, and in the course of Mr. Justice Ailshie's concurring opinion it is said: "If a thing really is property, the legislature by saying it shall not be considered such cannot in fact deprive it of the character and quality which constitute it property. . . . . It is a fundamental principle that every citizen has the inherent right to dispose of all his acquisitions."

In that case, however, the writer of this opinion dissented from the general conclusion reached by the majority of the court, on the ground that the water there referred to was leased from year to year, and neither the plaintiff nor his predecessor had purchased a water right nor had acquired a title to any water right other than the right to lease it from year to year for use upon a particular tract of land.   My

views then upon the question there involved and my views at the present time are set forth in that dissenting opinion.

In *Village of Hailey v. Riley,* 14 Ida. 481, 95 Pac. 686, 17 L. R. A., N. S., 86, it is held that the owner of the water right by purchase or original appropriation may sell the same separate and apart from the land.

A number of cogent reasons will be found in secs. 1015 and 1016, Kinney on Irr. & Water Rights, 2d ed., why a water right is not and ought not to be an inseparable appurtenance to land.

Under the provisions of par. 12 of sec. 1644, Rev. Codes, water rights were exempt from taxation except in case any water be sold or rented from a canal or ditch, and in such case the canal or ditch might be taxed to the extent of such sale or rental. Said paragraph and section were amended by the Laws of 1913, p. 242, but such amendment makes no change whatever so far as exempting said water rights from taxation is concerned. The water right in the case at bar is exempt from taxation, and the assessment-roll, as presented by the record, conclusively shows that the water rights involved in this case were not taxed or included in the assessment-roll and were not intended to be taxed. It is a well-recognized rule that real estate may be sold for taxes, but that such real estate must be subject to taxation and duly assessed. (*Quivey v. Lawrence,* 1 Ida. 313.) The same rule must apply to a water right since a water right is real estate. If a water right is exempt from taxation, it can never be legally assessed nor sold for taxes.

It is evident from the provisions of the settlers' contract that the purpose was not to make an absolute conveyance of the water right to the plaintiff's predecessor, since it provides, among other things, that no water shall be delivered to the purchaser from said irrigation system while any instalment, principal or interest is due and unpaid from the purchaser to the company. The state contract provides that pending the fulfillment of the contract between the entryman and the Land & Water Company, the entryman may have the right to the possession and enjoyment of the water right, and

the entryman's contract also provides that if he does not comply with the terms of his contract, he is not entitled to the right to the enjoyment or the possession of such water, nor can it reasonably be urged that the title of the water right passes to the purchaser upon the execution of his contract with the Land & Water Company, for in the present case, as well as in practically every Carey Act project, there was no water right in existence at the time of the execution of water right contracts. There is nothing in the contract to vest the water right in the entryman unless he makes payment for the same, or that makes the water right appurtenant to any land.

Under the provisions of sec. 1629, Rev. Codes, the legislature has declared that the water rights to all lands acquired under the provisions of the chapter in which said section is found shall attach and become appurtenant to the land as soon as the title passes from the United States to the state. That statute could not and did not make the water right an inseparable appurtenant to the land any more than it could make a building situated upon land, or timber growing on land an inseparable appurtenant to the land. The owner of the realty on which he has placed buildings and has trees growing may sell the building without selling the land, and also may sell the growing timber without selling the land, and the purchaser may remove them from the land.

If as soon as an entryman makes a contract for the purchase of water from a construction company to irrigate his land the water becomes an inseparable appurtenant to such land, the terms of the contract which provide that the Land & Water Company may refuse to deliver water unless payments are made in accordance with the contract would be absolutely without any value or force whatever, and the entryman would secure his water without regard to his payment therefor. No such inequitable construction of said contracts would be tolerated by any court.

In case the Land & Water Company must see that all taxes are paid on the lands within its project, or must bid the land in at tax sale in order to protect its water rights, the

very object and purpose for which the Land & Water Company was organized would be entirely defeated. It would be required to go into the land business, or buying and selling land and farming and making application of the water to the lands in order to protect the water rights. Said Land & Water Company is simply a Carey Act construction company, formed only for the purpose of acquiring a right to the use of water which it temporarily holds, in a certain sense, as trustee for the prospective entryman, and which water right the entryman perfects by the application of the water to the reclamation of such lands. The Land & Water Company at no time has a perfected water right in the sense that it has applied the water to the reclamation of land. In fact, it would be impossible for it to perfect a water right, as it holds no land upon which the water could be used, and it only complies with the legal forms in the initiation of the water rights for and on behalf of the prospective settlers, while the settler, by an application of the water to a beneficial use, perfects the water right and keeps and maintains the same alive, or prevents, by the use of water, such right from lapsing.

The Land & Water Company as a construction company acquires,, builds or constructs nothing for itself, but does so for the Canal or Operating Company and settler, and the entrymen own, operate and control the water rights and canal system through the medium of the Canal Company, in which they all become share or stockholders by making the payments for their water rights. Under the law and the decisions of this court, a water right is a distinct property right from the land on which it is used, and the water right being a separate and distinct right was not included in the assessment involved in this case, and could not have been, for the reason that such right is exempt from taxation under our laws.

The assessment-roll, including the land involved in this case, for the year 1910, is substantially set forth in the facts admitted by the demurrer and above given. There was no attempt in said assessment to assess the water right, as it is not mentioned on said assessment-roll; and even if the

assessor had attempted to assess the water right, he could not have legally done so, since it is exempt from taxation.

It appears from the record that the plaintiff is claiming his right to something he has not paid for. He is claiming a water right that was conditionally sold by the Land & Water Company to his predecessor for $1,400, on which purchase price he had paid $120, leaving a balance of $1,280. The Land & Water Company expended a vast amount of money in building a canal system so as to enable it to sell water rights and conduct the water to the place of intended use, relying upon such sales for its sole compensation for the cost of construction. To have such water rights taken from it without compensation would certainly work a manifest injustice to it, and to require the Land & Water Company to protect its water rights by the expenditure of a large sum of money in the payment of taxes on lands that it has no interest in whatever, not only would impose a heavy burden on the company but would force it, as above intimated, into the real estate business upon a large scale, and into a business contrary to its original purpose and object. As stated in the brief of counsel, its stockholders and promoters, while willing to hazard their money in construction work, might well object to farming operations and kindred activities. And yet, this is precisely what must happen if it should be held that the plaintiff can compel the delivery of water under this application. The plaintiff under his tax deed stands in the shoes and has all of the rights of the original entryman to comply with said water contract and to make payments in accordance with its terms and thus secure a water right for his said land. That is the correct rule in this class of cases, and the Land & Water Company or the Canal Company could be compelled to furnish him water in accordance with the terms of the contract upon his making the payments as therein stipulated.

We therefore conclude that the alternative writ heretofore issued in this case must be quashed and that the peremptory writ be denied. Costs are awarded to the defendants.

Budge and Morgan, JJ., concur.