(No. 4480. June 28, 1927.)

## ORSON STRONG, Appellant, v. TWIN FALLS CANAL COMPANY, a Corporation, Respondent.

[258 Pac. 173.]

WATERS AND WATER RIGHTS—CAREY ACT—WATER RIGHT APPURTENANT TO LAND—NONTRANSFERABLE—MAINTENANCE CHARGES, OWNER'S SHARE.

> The owner of a Carey Act (U. S. Comp. Stats., sec. 4685) water right may not sever it from the land to which it is appurtenant, merely to allow him to avoid his share of expense of maintaining and operating the diversion and distribution works, such water right not being capable of being transferred to and applied on other lands, and water which would not be available for the land but for the company's diversion and distribution to other users being still used on the land.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Action to quiet title; cross-complaint to foreclose lien.

Judgment for defendant and cross-complainant. *Affirmed.*

Walters & Parry and J. R. Keenan, for Appellant.

A water right may be conveyed apart from the land upon which it has been used, and the land may be conveyed without the water right theretofore used thereon. (*Hard v. Boise City Irr. etc. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Village of Hailey v. Riley,* 14 Ida. 481, 95 Pac. 696, 17 L. R. A., N. S., 86.)

A water right is not an inseparable appurtenance to Carey Act lands. (*Sanderson v. Salmon River Canal Co., Ltd.,* 34 Ida. 145, 199 Pac. 999; *Glavin v. Salmon River Canal*

Publisher's Note.
See Waters, 40 Cyc., p. 835, n. 48 New.

*Co., Ltd.,* 39 Ida. 3, 226 Pac. 739; *Bennett v. Twin Falls N. S. L. & W. Co.,* 27 Ida. 643, 150 Pac. 336.)

Right to transfer land separate from water right or water right separate from land is a constitutional right which may not be denied. (*Sanderson v. Salmon River Canal Co., Ltd., supra.*)

James R. Bothwell, for Respondent.

The respondent Twin Falls Canal Company had a right to file liens against appellant's land for maintenance for the years 1918 and 1919. (C. S., secs. 3040, 3041.)

The lower court did not err in holding that water rights in respondent's canal system were inseparably appurtenant to appellant's land.

Where the transfer of a paper right will not result in the transfer of the water represented thereby, by reason of physical conditions which render the flow permanent, the courts will not permit such transfer to be made.

Transfer of the same water right from the lands here in issue, having been refused by the court in another case, from which no appeal was taken, the question has become *res judicata.* (*Marshall v. Underwood,* 38 Ida. 464, 221 Pac. 1105; *Neil v. Hyde,* 32 Ida. 576, 186 Pac. 710; *Hilton v. Stewart,* 15 Ida. 150, 128 Am. St. 48, 96 Pac. 579.)

BRINCK, Commissioner.—The defendant is a Carey Act operating company, and plaintiff is the owner of certain lands irrigable from the canal system operated by defendant. The findings not attacked by appellant show that plaintiff has, ever since June 27, 1917, been the owner of the lands described in the complaint, having acquired same on said date by warranty deed from the then owner, Fanny L. Thomas; that on January 2, 1903, the state of Idaho, acting through its board of land commissioners, entered into a contract with the Twin Falls Land & Water Company, a Carey Act construction company, under which it was agreed that the company should construct irrigation works for the purpose of reclaiming a body of land then segregated and

set apart by the United States to the state of Idaho under the Carey Act, which segregation included the land now owned by plaintiff, as described in the complaint; that thereafter, and prior to 1917, said company sold to entrymen, plaintiff's predecessors in interest, shares or water rights in the irrigation system of the defendant, for the land described in the complaint; that thereafter plaintiff's predecessors in interest made due proof of reclamation as required by law, using for such proof the water rights and contract of purchase held as aforesaid; that at the time of the original segregation of said lands, and in determining the acreage which could be supplied with water from the appropriation made by defendant's predecessors in interest, it was considered and determined that certain lands, which were located at the lower and outer edge of the said project, should be supplied with water which had been previously used on lands above and adjacent to them; that the lands of plaintiff received water from defendant's irrigation system for the years 1918 and 1919, and that defendant filed claims of lien against the lands involved for their duly assessed maintenance for those years.

From the statement of facts in the briefs, the following facts seem to be conceded:

The lands of plaintiff are situated below the general level of the other lands in the project. A coulee called Cedar draw is a natural drainage channel, extending from the southern part of Twin Falls county, northerly to the Snake River. For about two miles back from the rimrock of the Snake River canyon, the banks of the draw are precipitous and some 200 or more feet in height, particularly at the mouth. Appellant's lands are situated below the rimrock on the Snake River, at the point where Cedar draw opens upon the canyon. When the lands within the project were segregated, there was no water flowing within Cedar draw sufficient to irrigate the lands now owned by plaintiff, but since the completion of the irrigation system of the project, a large stream of water, due both to underground drainage and

surface waste water, now flows in the draw, escaping into the Snake River.

There is evidence to the effect that the natural channel of Cedar draw is utilized as a part of the irrigation system of the project, not only as a wasteway, but as a catchway for all surface and drainage water that happens to come into it from the irrigated lands of the project, and laterals are taken out of it, wherever the contour of the country permits, in order to utilize the waste water to the best advantage; that in the year 1910 the construction company built a small dam and a ditch three-quarters of a mile long, to supply the lands involved in this case with water from Cedar draw, and, so far as the record shows, furnished water to irrigate the land up to the time the plaintiff acquired title in 1917. Prior to 1910, the water for the irrigation of these lands had been furnished by the construction company over the rimrock.

The warranty deed received by plaintiff from his grantor purports to convey the land described in the complaint, "together with the water rights used upon said premises from Cedar draw, and from the branch of Cedar draw coming into the same from the east, near the south boundary of the property conveyed"; the conveyance further reciting, "it being understood that no Carey Act water rights under Twin Falls Canal system are sold and delivered with this land, but that all such Carey Act water rights are hereby withheld and severed, and the former appurtenances having been severed from said lands hereby conveyed." Following this conveyance, the plaintiff took possession of the land and continued to use the water from Cedar draw through the ditch which had been constructed as aforesaid, for the irrigation of the lands. He contends that he is not using it by virtue of his grantor's water right, but has himself appropriated water flowing in the coulee which defendant has abandoned and allows to waste into the Snake River. The defendant, which is the operating company formed to take over the irrigation system from the construction company, duly filed for record its claims of lien under article 1 of

chap. 138, title 2, Idaho Compiled Statutes, for the maintenance charges assessed for the years 1918 and 1919 against the lands in question. The statute mentioned grants the right to such a company to claim a lien for such maintenance upon the land, to which the water right is appurtenant, regardless of whether the water is used or not.

Plaintiff brings this suit to remove from his title, as clouds thereon, the liens filed by defendant for maintenance for 1918 and 1919, and defendant by cross-complaint seeks to foreclose the liens. Judgment was rendered by the trial court for the defendant, foreclosing the liens and ordering the sale of the premises thereunder, and this appeal is taken by plaintiff from the judgment.

In addition to the findings hereinabove mentioned, which are not attacked, the court found as a fact that the water rights, represented by the contract between plaintiff's predecessor and the construction company, have been, at all times since the purchase of the water right, and are now, dedicated and appurtenant to the lands in question, and became permanently appurtenant and nontransferable; and made a conclusion of law to the same effect, and to the further effect that the water right was not reserved and severed from the lands by the conveyance to plaintiff; these findings and conclusions are assigned as error, all other assignments of error in the brief being expressly waived upon the argument.

Counsel for appellant states that this case presents only the question of whether the water rights may be severed from the land. He contends that land may be conveyed without a water right previously appurtenant thereto, citing *Hard v. Boise City Irr. Co.*, 9 Ida. 589, 76 Pac. 531, 65 L. R. A. 407; *Village of Hailey v. Riley*, 14 Ida. 481, 95 Pac. 696, 17 L. R. A., N. S., 86. In the case of *Hard v. Boise City Irr. Co.*, it was held by Justice Stockslager in the principal opinion that users of water from a ditch or canal acquire such a property right as they may transfer to other lands, and that they may also sell and transfer the right to use such waters and the purchaser may transfer the same to other lands; but it was further held that if the

change would affect the rights of other appropriators, or would, in any manner, interfere with the rights of the canal company, the change could not be made; and, in the special concurring opinion of Justice Ailshie, it is said that the statute, C. S., sec. 3240, providing that "the right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied, shall not be considered as being a property right in itself, but such right shall become the complement of, or one of the appurtenances of, the land or other thing to which, through necessity, said water is being applied," does not deprive or divest such right to the use of water of any of the qualities or elements of property it otherwise might have, and that there is no principle of law forbidding the owner of a tract of land from separating and segregating an appurtenance therefrom and disposing of it as he might any other property right. In the Village of Hailey case, the court held, with regard to a desert entry, that when the water had been used for reclaiming the land, final proof made and patent issued, the entryman took title to his land without any conditions or restriction, and the land became his property to dispose of as he might see fit, either the water and land together, or separately. Appellant also cites to the point that the fact that the lands in question were originally segregated under the Carey Act does not render the water an inseparable appurtenance, *Sanderson v. Salmon River Canal Co., Ltd.,* 34 Ida. 145, 199 Pac. 999, *Glavin v. Salmon River Canal Co., Ltd.,* 39 Ida. 3, 226 Pac. 739, and *Bennett v. Twin Falls etc. Co.,* 27 Ida. 643, 150 Pac. 336. In the Glavin case, the defendant, which was a Carey Act operating company, had consented to the transfer of the water right to other lands, and there were other lands in existence to which it could be applied. In the Bennett case, it was determined that a purchaser, at a tax sale of land, for a water right, upon which the previous owner had contracted with the Carey Act construction company, his purchase price for the water right not having been paid, could

not claim that the water right had become appurtenant to
the land in such sense that the construction company lost
its right to the unpaid purchase price; but it was held that
the tax sale purchaser stood in the shoes of the entryman
and could obtain the water right upon compliance with the
unperformed agreements of his predecessor under the con-
tract, thus recognizing that the water right of the previous
owner was appurtenant to the land and passed to the pur-
chaser, subject to the burden of completing the performance
of the contract obligatory upon the former owner. The
Sanderson case held, following *Sarret v. Hunter,* 32 Ida.
536, 185 Pac. 1072, that one who has appropriated water
and beneficially used it has a right to the use of the water
independent of his ownership of the land upon which it is
used, and further held, following the principle of the Vil-
lage of Hailey and Bennett cases, that C. S., sec. 3018, pro-
viding that water rights to all Carey Act lands shall attach
to and become appurtenant to the lands as soon as title
passes from the United States to the state, does not, and
cannot, have the effect of making the water right an insep-
arable appurtenance.

None of the cases cited are determinative of the question
here, because in each of them it appears that the severance
was with the intent to apply the water to beneficial use on
other lands. Here, so far as the record discloses, there was
no intention on the part of plaintiff's grantor to transfer
the use of the water to other lands, and there was evidence
tending to show that because of the physical conditions, the
water right here in question could not be transferred to and
applied on other lands; it is quite apparent from the evi-
dence that the water in question cannot be prevented from
collecting in Cedar draw, and cannot be taken out at a
higher level than plaintiff's land, for application upon any
other lands. Whether any transfer of a Carey Act water
right can be effected without obtaining the consent of the
operating company thereto, or, on refusal thereof, without
obtaining such right through application to the commissioner

of reclamation or by appeal from his decision to the proper court, as provided in C. S., secs. 3052–3056, it is not necessary to consider here because there was no actual transfer and, it would seem, no physical possibility of a transfer to other lands. The right to sever a water right from the land to which it is appurtenant is recognized in the cases cited only for the purpose of transferring it to other beneficial use, and then only when no other party is injured; and an attempted severance of the right without such transfer, either affected or intended, would be ineffectual for failure of subject matter upon which the attempted severance could operate. In the absence of a beneficial use, actual or at least potential, a water right can have no existence. It cannot be property separate and apart from the specific use being made of it if there is no other use to which it can be put. The water not being capable of other use than that here made, and not being capable of transfer to other lands, the finding that the water right was an inseparable appurtenance to the land is clearly correct, and the evidence is sufficient to support it.

Indeed, under the circumstances of this case, it would be inequitable to permit the plaintiff to avail himself of the device here conceived to avoid contributing, with the other water users of the project, his proportionate share of the expense of maintaining and operating the diversion and distribution works. The water he uses is identical in amount, source, diversion and mode of distribution with that which his predecessors received and defendant's predecessor furnished under contract binding both of them; and the water is furnished him in precisely the manner contemplated in the contract between the state and the construction company, and by all parties involved throughout the transaction. His predecessors could not have made entry upon the land without acquiring this particular water right, nor could they have acquired the water right except by entry of this particular land. The water right has not been transferred to other land. Without the defendant's present diversion

from the stream and distribution to other users, no water would be available for plaintiff. The position of plaintiff, in seeking to take advantage of the accidental condition existing, whereby the defendant cannot, while serving the other water users, prevent the water taken by plaintiff from flowing to him, and in attempting, by a mere paper severance of the appurtenant water right, to avoid maintenance charges, while retaining the benefits enjoyed by his predecessors, does not entitle him to relief in a court of equity.

We recommend that the judgment be affirmed.

Varian and Johnson, CC., concur.

PER CURIAM.—The foregoing is approved as the opinion of the court, and the judgment is affirmed.