(No. 6779.  May 23, 1940.)

In re ZEB ROBINSON (WENDELL HIGHWAY DIS-
TRICT No. 16 et al., Intervenors).

[103 Pac. (2d) 693.]

Edwin Snow and A. F. James, for Petitioner-appellant.

464

Wayne Barclay, Richards & Haga, Frank L. Stephan and J. H. Blandford, for Respondent.

Bissell & Bird, for Intervenors.

J. R. Bothwell, *Amicus Curiae.*

GIVENS, J.—Petitioner owns 160 acres, together with 143.9 shares of the capital stock of the North Side Canal Company, a Carey Act operating company; each share representing ⅝ths of a miner's inch of water or a total of 89.9 inches. However, because the water is measured at the head of the canal system and only 61 per cent of the canal's capacity is delivered, petitioner actually has only 54.83 inches of water, which he has applied beneficially on approximately 130 of his 160-acre tract. The available quantity of the Canal Company's natural flow water rights in Snake River, because of later priority relative to other Snake River appropriations, vary in amount from season to season, some years ceasing as early as April 10th and other years extending until July 1st. The Canal Company's natural flow rights are supplemented by storage water from Jackson Lake Reservoir, American Falls Reservoir and by several temporary "accommodation" leases of water from such sources as Idaho Power Company, Hillsdale Irrigation District, Twin Falls Canal Company, Blackfoot Reservoir and the Milner Low-lift Project. Even with these storage waters the supply in the project is often insufficient after certain dates during the irrigation season.

For these reasons and because of certain crops which he wishes to raise, namely, alfalfa seed, potatoes, onions, sugar beets etc., petitioner contends, and the court found, he could beneficially use additional water. In 1937 petitioner purchased from Idaho Farms Company, a 40-acre tract adjoining his 160 in the same Carey Act segregation together with the water right appurtenant thereto, being 40 shares of the capital stock of the North Side Canal Company, representing a paper right at ⅝ths of an inch to the acre or 25 inches, for the purpose of permanently transferring the water from it to, and using it on, his 160-acre tract.

Pursuant to statute (sec. 41–2103, I. C. A.) petitioner applied to the board of directors of the North Side Canal Company for permission to make such transfer; the board refused to permit the transfer, whereupon he appealed to the commissioner of reclamation (sec. 41–2104, I. C. A.) who in turn refused to permit the change. Both the board of directors of the company and the commissioner of reclamation were will-

ing to permit the change of place of use of 16.1 shares of water from the 40-acre tract to the 160 on the theory that petitioner should be entitled to 160 shares for the 160-acre tract. Petitioner then appealed from the decision of the commissioner of reclamation to the district court (sec. 41–2105, I. C. A.) which affirmed the refusal on this finding:

"That it is contrary to public policy to determine the duty of water on the irrigation project of said North Side Canal Company, Limited, according to the kind or character of crops which one may for the time being desire to grow on his land, or according to the kind or character of the farming being done by person in possession of such land; that it would be contrary to public policy to permit the transfer of more water than is represented by 16.1 shares of the capital stock of said North Side Canal Company, Limited, and now appurtenant to the land described in Paragraph I of said Findings."

The court also found that petitioner could beneficially use all of the water, both from the 40-acre tract and from the 160 acres on the land cultivated by him on the 160-acre tract for the growing of crops he desired to raise.

The matter is now before us on petitioner's appeal from said judgment.

■ The Canal Company insists petitioner is not the real party in interest because of his agreement with the Idaho Farms Company that if he could not secure the transfer of the water right the sale of the 40 acres and appurtenant water would not be consummated. This agreement was made because petitioner did not desire to purchase the land and water unless he was able to secure title which would permit a transfer of the water right, an entirely legitimate precautionary measure on his part. The title to the 40 acres stands in his name, there is no cross-appeal, the court did not find he was not the real party in interest and so far as this appeal is concerned he is the real party in interest and there is no merit to this contention.

■ The Canal Company seeks to sustain the order and judgment of the district court on the ground it is against public policy to permit one to grow crops on a Carey Act project which require extra water, i. e., more than the original allotment of water, that the only water right contemplated

by the original segregation as approved by the state and the basis for the patent by the United States through the state to the settler, was a right sufficient for the ordinary crops then grown,[1] that the growing of the particular crops raised by appellant will deplete the soil and that the 40-acre tract will be made worthless by the transfer of the water from it.

In passing, it would take a tremendous stretch of the imagination to say potatoes are not an ordinary or usual crop in Idaho, when it is probably the best known agricultural product

[1] Articles of Incorporation of the North Side Canal Company, Ltd., paragraph II, prescribes the purposes of said corporation:

" . . . . to acquire, hold, own, maintain and control the waters from Snake River or other sources of supply and to distribute the same among its stockholders equally and ratably by a method of distribution to be devised in accordance with the contract between Twin Falls North Side Land and Water Company and the state of Idaho; . . . .

The By-laws of respondent company, Art. VI, Paragraph 8, provides:

" . . . . it shall be the duty of the corporation to use reasonable care in the handling and management of its water supply and to distribute the same without partiality in accordance with the terms of the contract between the Settlers and the Twin Falls North Side Land and Water Company, and in accordance with the terms of the contract between said Twin Falls North Side Land and Water Company and the state of Idaho, and amendments thereto."

The contract between Twin Falls North Side Land and Water Company and the state, paragraph 4, provides:

"Now, therefore, the said party of the second part (Twin Falls North Side Land and Water Company) agrees to furnish and deliver to said Canal and to the owners of shares therein, as specified in the other provisions of this contract, all of said appropriated waters to which said second party may be entitled to the extent of one-eightieth (1/80) of one cubic foot per second of time per acre, . . . . "

Paragraph 10 of said contract provides:

"Each of said shares of water rights shall represent a carrying capacity, in said canal sufficient to deliver water at the rate of one-eightieth (1/80) of one second foot per acre. . . . . "

Paragraph 10 of said contract provides:

"The certificates of shares of stock of the North Side Canal Company, Limited, shall be made to indicate and define the interest thereby represented in the said system to-wit, a water right of one-eightieth (1/80) of a cubic foot per acre for each acre and a proportionate interest in said canal based upon the number of shares ultimately sold therein."

in Idaho and we may safely say the Idaho potato is nationally famous.

The Canal Company also contends that since the settler acquired the land and water as of ⅝ths inch to the acre on proof of reclamation and representation by the Carey Act construction company that such water right was sufficient, no additional water could ever be necessary or legally acquired and used on said land. The Carey Act construction company was obligated to deliver this amount and such was the limit of its duty but such was not a limit on what the settler might later need or use or require. (*Tapper v. Idaho Irr. Co., Ltd.,* 36 Ida. 78, 210 Pac. 591.)

Intervenors, Wendell Highway District No. 16, Wendell Independent School District No. 35, West Point Highway District No. 4, the Village of Wendell and certain individual taxpayers, contend that transferring the water from the 40-acre tract will decrease its value and that thereby the tax burden will be increased proportionately on all other tax-

---

The contract between Twin Falls North Side Land and Water Company and the settlers provides:

"This certificate entitles the owner thereof to receive one-eightieth (1/80) of a cubic foot per acre per second of time for the following described land. . . . . "

"The water which the purchaser shall have the right to conduct and receive through the said canal system shall be used upon and the water shall become dedicated and appurtenant to the following described land and no other. . . . . "

The contract between the settler and the construction company further provides:

"This agreement is made in accordance with the provisions of a certain contract between the state of Idaho and the Company, which together with the laws of the state of Idaho under which this Agreement is made, shall be regarded as defining the rights of the respective parties, and shall regulate the provisions of the shares of stock to be issued to the purchaser by the North Side Canal Company, Limited."

The last paragraph of section 3, article X of the by-laws of respondent company provides:

"No transfer of any stock shall be made whereby the stock shall become appurtenant outside of the project or to any land other than that described in the stock certificate except by consent of the Twin Falls North Side Land and Water Company, its successors or assigns, and this corporation."

payers within the respective taxing units, both on bonded indebtedness and otherwise.

No such restrictions on the right to change the place of use or transfer of water appear in the statutes or the decisions of this court, nor have decisions of other courts been called to our attention in support of such reasoning. Directly to the contrary is *Muir v. Allison,* 33 Ida. 146, 159, 191 Pac. 206, where the court held a user's water right could not be permanently limited by the character of crops raised unless it is shown that under existing conditions the soil is adapted to only a limited kind of crops.

The lodestar of utility of irrigation water is application to a beneficial use without waste, i. e., using no more than is necessary according to the standards and practices of good husbandry for the particular crop sought to be grown, soil and all other essential factors and conditions being taken into consideration, but it does not place any restriction on the kind of crops one may desire to raise. (*Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 44, 147 Pac. 1073; *Pyke v. Burnside,* 8 Ida. 487, 69 Pac. 477.)

Petitioner has fee simple title to the land and water (secs. 41-1719, 41-1722, 41-1725, I. C. A.; *Leland v. Twin Falls Canal Co.,* 51 Ida. 204, 3 Pac. (2d) 1105); the only restriction on his title is that he must apply the water to a beneficial use and may not waste it. One of the incidents of such ownership is the right to transfer or change the place of use of the water if no other water user is thereby injured. (*First Security Bank v. State,* 49 Ida. 740, 291 Pac. 1064.)

The court found it would require the full amount of water represented by the 183.9 shares of stock to successfully grow the crops he desires to grow, hence the direct finding is supported by ample evidence that the water will not be wasted.

This court held, beginning with *Hard v. Boise City Irr. etc. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407, that a water right is real property and may be sold or transferred separate and apart from the land on which it is used and may be made appurtenant to other lands so long as such transfer does not injure other appropriators. This rule has been consistently adhered to. (*Farmers Co-operative Ditch Co. v. Riverside Irr. Dist.,* 14 Ida. 450, 94 Pac. 761; *Village of*

*Hailey v. Riley,* 14 Ida. 481, 95 Pac. 686; 17 L. R. A., N. S., 86; *Murray v. Public Utilities Com.,* 27 Ida. 603, 619, 150 Pac. 47, L. R. A. 1916F, 756; *Bennett v. Twin Falls N. S. L. & W. Co.,* 27 Ida. 643, 150 Pac. 336; *Glavin v. Salmon River Canal Co,* 39 Ida. 3, 226 Pac. 739; *Crockett v. Jones,* 42 Ida. 652, 249 Pac. 483; *Strong v. Twin Falls Canal Co.,* 44 Ida. 427, 258 Pac. 173; *Twin Falls Canal Co. v. Shippen,* 46 Ida. 787, 271 Pac. 578; *First Security Bank v. State, supra; In re Department of Reclamation,* 50 Ida. 573, 300 Pac. 492; *In re Rice,* 50 Ida. 660, 299 Pac. 664; *Andrews v. North Side Canal Co.,* 52 Ida. 117, 12 Pac. (2d) 263; *Taney v. Crum,* 55 Ida. 25, 37 Pac. (2d) 235; *Hillcrest Irr. Dist. v. Nampa etc. Irr. Dist.,* 57 Ida. 403, 66 Pac. (2d) 115.)

█ As to change of place of use or transfer of water (within a Carey Act system, sec. 41–2101, I. C. A.) the only injury which another user may set up is injury to his water right and/or the use thereof. The court herein found the ditches and laterals had sufficient capacity to convey the water appurtenant to the 40-acre to the 160-acre tract without injury to any other water user. The 40-acre tract and the 160-acre tract are both in the same system (sec. 41–2101, I. C. A.). While not directly in point, this court has in effect recognized such transfers. (*Glavin v. Salmon River Canal Co., supra; Sanderson v. Salmon River Canal Co.,* 34 Ida. 145, 199 Pac. 999; *Bennett v. Twin Falls etc. Co., supra; Strong v. Twin Falls Canal Co., supra; Leland v. Twin Falls Canal Co., supra.*)

Intervenors show no injury to their water rights, in so far as they have any, and the geographical limits of West Point Highway District No. 4 and the Village of Wendell do not even include the 40-acre tract.

█ The duty of water is in no way involved herein for all rights under the project are of the same priority. The duty of water affects holders of different priorities. (*Moe v. Harger,* 10 Ida. 302, 77 Pac. 645; *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

█ Respondents contend there are some 11,000 acres within the project owned by the Idaho Farms Company and that this is a test case and if appellant is successful all the water will be sold from these 11,000 acres. We held in *North*

*Side Canal Co. v. Idaho Farms Co.,* 60 Ida. 748, 96 Pac. (2d) 232, that the Idaho Farms Company owned this land and appurtenant water the same as any other purchaser at foreclosure sale and could be compelled to pay maintenance costs as any other owner under the project. It is therefore their land and their water and the record herein discloses no reason for the refusal by the board of directors, the commissioner of reclamation or the district court to permit the transfer and use of water from the 40-acre tract to the 160-acre tract.

The judgment of the district court and the order of the commissioner of reclamation are therefore reversed and the cause remanded with directions to enter judgment and order allowing the transfer.

Costs to petitioner.

Budge, Morgan and Holden, JJ., concur.

Ailshie, C. J., deeming himself disqualified, did not participate.

Petition for rehearing denied.