W. E. BRUFFEY, ELMER ARNESON, H. B. TETLIE, C. M. McCOMB, WALLIS HUIDEKOPER, ROBERT DAVIS, WALTER PAPEZ, LOWELL G. GIBSON, JONAS MAULAND, GLENN R. JOHNSON, ARNE HOEM, JOHN G. JOHNSON, OLE SOLBERG, SIGURD LAVOLD, JR., GEORGE LIEN, CHARLES A. DEMPSTER, C. D. WOLF, HANS BELEY, AND FRANK R. MARSHALL, PLAINTIFFS AND APPELLANTS, v. BIG TIMBER CREEK CANAL COMPANY, A CORPORATION, JOHN PLAGGEMEYER, INDIVIDUALLY AND AS PRESIDENT OF SAID CORPORATION, HARRY PLAGGEMEYER, INDIVIDUALLY AND AS SECRETARY OF SAID CORPORATION, EARNEST E. KORTUM, QUINCY HUYSER, SR., SIDNEY HUYSER, JOHN HUYSER, WALLACE FETTER AND BERT POWELL, DEFENDANTS AND RESPONDENTS.

No. 9944.
Submitted December 4, 1959. Decided February 19, 1960.
As amended on Denial of Rehearing May 19, 1960.
351 Pac. (2d) 606.

Claude C. Gray, Big Timber, Ralph J. Anderson, Stanley P. Sorenson, Helena, for appellants. Claude C. Gray and Ralph J. Anderson argued orally.

Ben E. Berg, Jr., Bozeman, Vard Smith, Livingston, for respondents. Ben E. Berg, Jr., argued orally.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This action is one to restrain defendants in the use of water of Big Timber Creek in Sweet Grass County.

The case was tried to the court without a jury resulting in findings and judgment in favor of defendants. The appeal is from the judgment and is taken by all plaintiffs except Robert Davis and Walter Papez.

The parties, or their predecessors in interest, were parties in an action entitled Bailey v. Tintinger, 45 Mont. 154, 122 P. 575. In that action the Glass-Lindsay Land Co., predecessor in interest of defendant Company, was awarded 1,000 inches of the waters of Big Timber Creek as of December 20, 1892. As a result of the appeal that amount was increased an additional 770 inches as of the same date, December 20, 1892. All of the water decreed to Glass-Lindsay Land Co. was alleged to be for the purpose of reclaiming arid lands under the Carey Land Act and other private lands. Plaintiffs, or their predecessors in interest, by the same decree were awarded various rights some of which are superior and some inferior to that of the Glass-Lindsay Land Co.

Those of plaintiffs who have appealed contend that until 1954 the defendant Company, and its predecessors in interest, used no more than 1,000 inches of the waters in question, and that when they commenced using it in 1954 it depleted the flow in the creek to the point that plaintiffs' rights could not be filled.

They further contend that defendant, and its predecessors in interest, abandoned the right to the 770 inches and plaintiffs, and their predecessors in interest, acquired it by adverse possession and by this action seek to limit defendant Company's use to 1,000 inches. It also contends that the defendant Company wastes the additional 770 inches of water and seeks to restrain such waste.

At the trial, the proof was directed to abandonment only and there was no attempt to prove adverse user.

On the point of the carrying capacity of the ditch or canal prior to 1954, the evidence was in sharp conflict. Plaintiffs introduced evidence that the carrying capacity did not exceed

1,200 to 1,500 inches. Defendants' proof was that it had a carrying capacity of 2,200 inches and that its full capacity was used by defendant Company and the two plaintiffs, Davis and Papez.

The court, after viewing the premises, found in accordance with the testimony of defendants, and in line with well-settled principles of law we will not interfere with those findings, supported as they are by substantial evidence.

But plaintiffs who are appellants here complain that the court erred in excluding certain evidence. The excluded evidence was offered through the witness Fred Buck, State Engineer. He testified without objection that he is the Secretary of the Carey Land Act Board and as such had charge of the records of that Board, and that proof was presented to the Board as a condition to obtaining patent to Carey land, that, being the Board that issues the patents.

He testified that patent had been issued to certain described land after proof that the land had been irrigated. Such proof was presented as to three tracts of land without objection and then an objection was interposed as to further testimony along that line and sustained. Plaintiffs then offered exhibits 23 and 24 which were excluded. They assign error in excluding those exhibits.

When exhibits 23 and 24 were offered defendants' counsel asked the object of such evidence. To this request, both counsel for plaintiffs replied as follows:

"Mr. Payne: The object of the Plaintiffs' exhibit 23 is *to* show the original contract which was entered into with the Glass-Lindsay Land Company and the Carey Land Act Board of Montana in regard to the canals it would construct and the names of those canals. And the object of Plaintiffs' exhibit 24 is to show lands that were patented with water on them from the water to be used in this irrigation system and in our evidence we have shown there are no waters, no irrigation

existing on those lands at this time. I think it ties in with the testimony of Mr. Arneson and several other witnesses.

"Mr. Gray: It ties in with the maps and exhibits showing where the ditch was run, that is 3 and 2, 2, 3 and 8, I think it is, and the contract shows that they were to build a ditch down there and irrigate and they were claiming these arid lands. Exhibit 24 shows the proof on that arid land were titled, was obtained from the state, a patent from the state on the proof on exhibit 24. It ties in with our evidence there is no water on those lands now and it has not been used on there for years."

The defendant then interposed the following obection:

"Mr. Smith: The defendants object, * * * to the introduction of this evidence on the grounds that it is incompetent, irrelevant and immaterial for any purpose in this case and entirely without the issues either established by the pleadings or by a stipulation which is on file in this court in this matter, regarding the title to lands, it has been stipulated that the points on these different parcels of land. In view of that stipulation as to ownership, I don't see these could be material."

Mr. Gray, one of counsel for plaintiffs, then stated:

"Mr. Gray: This is not pertaining to the lands of the plaintiffs, this is suit for abandonment. This proof is presented herein showing that water from this canal was taken to irrigate those lands and that those lands were later sold to Arneson, one of the plaintiffs, without water, no intention of putting any water there, the use of those lands has been entirely abandoned."

Exhibit 23, being the contract between the State of Montana and the Carey Land Board, contains nothing that affected the question of abandonment of any water.

While the exhibit might have been of interest in obtaining a complete understanding of the objects and purposes of the organization of the Glass-Lindsay Land Co., predecessor in interest of the defendant corporation, its exclusion does not ap-

pear to have prejudiced any right of plaintiffs. Were we to hold that the contract should have been received in evidence, the result reached by the trial court on the merits of the action would not be affected.

As to exhibit No. 24, it consisted of several applications for Carey lands and the other papers in connection with them from the records of the Carey Land Board.

■■ Plaintiffs, who have appealed, contend that since the applications disclose that the lands were served with water from the canal of the Glass-Lindsay Land Co., those rights of necessity have been abandoned by a sale of the land without the water rights. They reach this conclusion because of section 81-2118, which provides: "The water rights to all lands acquired under the provisions of this act shall attach to and become appurtenant to the land as soon as title passes from the United States to the state". And that part of section 81-2112, reading: "After the state has obtained patent, it may issue deeds at any time when the land is paid for, in tracts of not less than forty acres nor more than one hundred and sixty acres to any stockholder designated by the association, being a settler upon any of said lands. Water rights for said lands shall be appurtenant to and inseparable from the legal subdivision for which it was appropriated." The record shows that most if not all of the lands were sold to Mr. Arneson with the expressed condition that no water rights passed with the land.

The cases of Valier-Montana Land & Water Co. v. Ries, 109 Mont. 508, 97 P.2d 584, and Valier Co. v. State, 123 Mont. 329, 215 P.2d 966; Id., 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607, contain full explanations of the system by which the Carey lands are allotted. No useful purpose would be subserved in repeating what was there said.

The statute is not susceptible to the construction placed upon it by plaintiffs. Immediately following the above-quoted language from section 81-2118 is the following: "Any person, company, or association furnishing water for any tract of land

shall have a first and prior lien on said water right and land upon which said water is used for all deferred payments for said water rights; said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner or possessor of said lands.''

The statute, as a whole, indicates that the purpose of making the water right appurtenant to the land and inseparable therefrom was to enable the construction company to retain an enforceable lien on both the land and water right, and that after the lien is satisfied the water right may be transferred to other lands with the same freedom that water rights generally may be transferred, so long as the rights of others are not adversely affected. Compare Twin Falls Salmon River Land & Water Co. v. Caldwell, 9 Cir., 242 F. 177, 155 C.C.A. 17.

In Glavin v. Salmon River Canal Co., 39 Idaho 3, 226 P. 739, 744, the court, in speaking of Carey land, had this to say: ''This court has held that an owner of a water right by purchase or original appropriation may sell the water right separate and apart from his land. [Citing cases.]''

On a similar question, the court in Village of Hailey v. Riley, 14 Idaho 481, 95 P. 686, 690, 17 L.R.A.,N.S., 86, said: ''It will be seen from the findings that the trial court proceeded upon the theory that by the use of the water through the Big Ditch from Big Wood river upon the desert entry of said Hailey, under which said desert entry was reclaimed, and upon which final proof was made, said water became an appurtenant to said land and inseparable therefrom. If this be the theory upon which said case was tried, and the view of the law upon which the findings are founded, then said findings are unwarranted by law. There is no statute of the United States, or of this state, which prohibits a desert entryman from disposing of the water used for final proof, separate from the land, after proof has been made. When the water had been used for reclaiming said land, and final proof of the same had been submitted to the government and patent issued therefor, the entryman had com-

plied with the legal requirements prescribed by the government, and took title to his land without any conditions or restrictions. The land became his property to dispose of as he might see fit, either the water and the land together or separately.''

To the same effect are Bennett v. Twin Falls North Side Land & Water Co., 27 Idaho 643, 150 P. 336, and Sanderson v. Salmon River Canal Co., 34 Idaho 145, 199 P. 999.

Certainly this is the rule after the construction company transfers the project to the operating company for then the so-called restriction has no application. Here, the project has long since been transferred by the construction company, the Glass-Lindsay Land Co., to defendant, the operating company.

An analogous question was before the court in Valier Co. v. State, 123 Mont. 329, 358, 215 P.2d 966, 981. There the question was whether the statutory provision that the lands must be sold in lots of 160 acres or less was applicable to the construction company after it had taken deeds in lieu of foreclosure. The majority opinion of the court ruled that it did, but specifically ruled that after the construction company secures approval of the project and transfers ownership to the operating company the transfers thereafter are not controlled by the statute. The majority opinion of the court stated: ''The construction company may sell to actual settlers in lots of 160 acres or less, secure approval of the project and then transfer the ownership of the system to the operating company. Beyond that point, transfers are without the control of the statutes and the contract provisions; beyond that point transfers are free and unrestricted.''

The Legislature hastened to change the rule (Chapter 62, Laws 1951) and made it plain that after the land and water rights are obtained by deed in lieu of foreclosure, the lien holder who has obtained the deed may sell without regard to the 160 acre limitation.

Idaho has reached the same result as we do here under a

statute somewhat similar. Bennett v. Twin Falls North Side Land & Water Co., 27 Idaho 643, 150 P. 336, supra. It has also ruled that any other construction would render the statute unconstitutional. Thus in Sanderson v. Salmon River Canal Co., the court said: ''C.S.. § 3018, providing that water rights to all Carey Acts lands shall attach to and become appurtenant to the land as soon as title passes from the United States to the state, does not, and cannot, have the effect of making the water right an inseparable appurtenance of the land. To give it such effect would be to render it unconstitutional.''

The court did not err in excluding exhibits 23 and 24, or in finding and holding against plaintiffs' contention that defendant Company, or its predecessors in interest, had abandoned any part of the 1,770 miner's inches of Big Timber Creek, or in finding that plaintiffs had not acquired any right therein by adverse possession. Other contentions of plaintiffs, who have appealed, have been given consideration, and we find nothing in the record to justify us in disturbing the findings and judgment of the trial court.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR and CASTLES concur.